1

**P O R T E R | S C O T T**

2   A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
3   Barakah M. Amaral, SBN 298726
350 University Ave., Suite 200
4   Sacramento, California 95825
TEL: 916.929.1481
5   FAX: 916.927.3706

6
Attorneys for Defendants SACRAMENTO COUNTY SHERIFF'S OFFICE
7   and SGT. GREGORY

8                    UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
9

10
MICHAEL LENOIR SMITH,                    Case No. 2:15-CV-1598 JAM KJN P
11
              Plaintiff,          **MEMORANDUM OF POINTS AND**
12                                **AUTHORITIES IN SUPPORT OF**
                                  **DEFENDANTS' MOTION FOR**
13   v.                            **SUMMARY JUDGMENT**

14   DARREN ALBEE, et al.

15          Defendants.

16
_____ /
17

18

19

20

21

22

23

24

25

26

27

28

{02099184.DOCX}

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

**Page**

I.      INTRODUCTION ......................................................................................1

II.     PROCEDURAL BACKGROUND ...........................................................2

III.    FACTUAL BACKGROUND .....................................................................3

    A.      Background Information ................................................................3

    B.      Plaintiff Housed at SCMJ Twice Between 2013 and 2015 ..................3

    C.      Plaintiff's Locator Cards ................................................................4

    D.      Plaintiff Files Instant Civil Action .................................................5

IV.    LEGAL STANDARD .................................................................................6

V.     ARGUMENT ..............................................................................................6

    A.      Plaintiff's Due Process Claim Fails to Establish the Existence of
    Protected Liberty Interests ................................................................7

        1.  Defendant's Decision to Place Plaintiff in Total Separation
        Comported With Its Discretionary Authority .............................8

            a.  Defendant Had Legitimate Reasons for Initially Classifying
            Plaintiff in T-Sep Housing .............................................9

            b.  Being Housed With Dangerous Individuals is Not Atypical or
            Significant to Prison Life .............................................11

        2.  Plaintiff's Placement in Sobering Cell Not Based on Information on
        Locator Cards ......................................................................11

        3.  Plaintiff Was Not Deprived of Law Library Access or Legal Mail ..................12

        4.  Plaintiff Was Not Deprived of Medical Care for Serious Medical
        Needs ..................................................................................13

        5.  Defendant Initiated Incident Reports Against Plaintiff for Legitimate
        Reasons ................................................................................14

{02099184.DOCX}                                        i

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

6. Plaintiff Provided All Required Commissary ....................................15

7. Defendant Cannot Be Found Liable for Acts Taken by Third Parties .............16

8. Plaintiff's Conclusory Assertions Will Not Suffice on a Motion for Summary Judgement ....................................16

9. Plaintiff's Claims Regarding Sadness, Anger, Depression, Nightmares and Hopelessness Are Not Atypical to Prison Life ............................17

10. None of Plaintiff's "Atypical" Hardships Will Affect the Duration of His Sentence ....................................17

B. Defendant's Practice of Annotating Locator Cards Intended to Preserve and Maintain Institutional, Personnel and Inmate Safety ....................17

VI. CONCLUSION ....................................21

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}

ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page**

4

**Supreme Court Cases**

5

*Anderson v. Liberty Lobby, Inc.*
     477 U.S. 242, 248 (1986) ............................................................................ 6

6

7

*Bell v. Wolfish*
     441 U.S. 520, 546 (1979) .......................................................................... 17

8

*Celotex Corp. v Catrett*
     477 U.S. 317, 323 (1986) ............................................................................ 6

9

10

*Cruz v. Beto*
     405 U.S. 321 (1972) .................................................................................. 18

11

12

*Hewitt v. Helms*
     459 U.S. 460, 466-68 (1983) .................................................................. 7, 9

13

*Jones v. North Carolina Prisoners' Labor Union*
     433 U.S. 128 (1977) .................................................................................. 18

14

15

*Lujan v. National Wildlife Federation*
     497 U.S. 871, 888-89 (1990) ...................................................................... 6

16

17

*Meachum v. Fano*
     427 U.S. 228- 229 (1976) ......................................................................... 18

18

19

*Paul v. Davis*
     424 U.S. 693, 711-14 (1976) .................................................................... 20

20

21

*Pell v. Procunier*
     417 U.S. 823 (1974) .................................................................................. 17

22

*Procunier v. Martinez*
     416 U.S. 104-405 (1974) .......................................................................... 18

23

24

*Sandin v. Conner*
     515 U.S. 472, 481-84 (1995) ....................................................... 7, 8, 16, 17

25

26

*Superintendent v. Hill*
     472 U.S. 445, 455 (1985) .................................................................. 10, 15

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

*Whitley v. Albers*
    475 U.S. 312, 321-22 (1986) ................................................................. 18

*Wilkinson v. Austin*
    545 U.S. 209, 221 (2005) ........................................................................ 7

*Wolff v. McDonnell*
    418 U.S. 539, 556 (1974) ....................................................................... 15

**Federal Court Cases**

*Bowring v. Godwin*
    551 F.2d 44, 47-48 (4th Cir. 1977) ....................................................... 13

*Bruce v. Ylst*
    351 F.3d 1283, 1287 (9th Cir. 2003) ..................................................... 10

*Dennison v. Ryan*
    522 Fed. Appx. 414 417 (9th Cir. 2013) ................................................ 7

*Finley v. Rittenhouse*
    416 F.2d 1186 (9th Cir. 1969) ............................................................... 16

*Freeman v. Rideout*
    808 F.2d 949, 951 (2nd Cir. 1986) ........................................................ 21

*Gordon v. Maycayo*
    43 Fed. Appx. 67 (9th Cir. 2002) .......................................................... 10

*Jackson v. McIntosh*
    90 F.3d 330, 332 (9th Cir. 1996) ........................................................... 13

*Keenan v. Hall*
    83 F.3d 1083, 1089 (9th Cir. 1996) ................................................... 8, 15

*Mann v. Adams*
    855 F.2d 639, 640 (9th Cir. 1988) ......................................................... 15

*May v. Baldwin*
    109 F.3d 557, 565 (9th Cir. 1997) ........................................................... 9

*Patel v. Penman*
    103 F.3d 868, 874 (9th Cir. 1996) ........................................................... 7

{02099184.DOCX}                                        iv

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

*Ramirez v. Galaza*
    334 F.3d 850, 862 (9th Cir. 2003) ................................................................8, 17

*Resnick v. Hayes*
    213 F.3d 443, 448-49 (9th Cir. 2000) .................................................................8

*Sands v. Lewis*
    886 F.2d 1166, 1169 (9th Cir. 1989) ................................................................12

*Sprouse v. Babcock*
    870 F.2d 450, 452 (8th Cir. 1989) ....................................................................20

*Velasquez v. Woods*
    329 F.3d 420, 421-22 (5th Cir. 2003) ..............................................................20

*Witherow v. Paff*
    52 F.3d 264, 265 (9th Cir. 1995) ......................................................................12

**Statutes**

42 U.S.C. § 1083 .................................................................................................16

F.R.C.P. 56(a) ......................................................................................................6

{02099184.DOCX}                                        v

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# I.

## INTRODUCTION

Plaintiff MICHAEL LENOIR SMITH ("Plaintiff") is a state prisoner serving a life sentence after being convicted of two bank robberies, drug trafficking, and criminal threats. He was housed at the Sacramento County Main Jail ("SCMJ") for two separate time periods between 2013 and 2015 on an "Order to Produce." For each period of incarceration at SCMJ a locator card was created for Plaintiff. The locator cards are created after an inmate is booked and given his or her housing classification. The locator cards provide floor deputies with safety/security information about each inmate while housed at the SCMJ.

There is a "remarks" section on each locator card. Sacramento County Sheriff's Department (hereinafter "Defendant") uses the "remarks" section to identify safety and security concerns. In accordance with that practice, Defendant annotated Plaintiff's two locator cards with the following security concerns: known for gassing, known for litigation, "SHU" inmate[1], and attempted to murder a deputy by trying to throw the deputy over a tier at the jail in 2002, with a reference to an internal jail incident report number.

Plaintiff now brings this civil action claiming Defendant violated his due process rights by annotating his locator cards with the above information. He claims that Defendant imposed 23 negative conditions on him because of the information on his locator cards. Fundamentally, Plaintiff's claims fail because the information on the locator cards is true. Further, there is no evidence an action taken by Defendant was related to any information on the locator cards. Additionally, Plaintiff's claims fail because the prison conditions imposed on him were not "atypical and significant" to prison life. Even if Plaintiff can proffer evidence about the "conditions," the undisputed facts show that Defendant took action against Plaintiff for legitimate reasons. Defendant's legitimate reasons were not associated with the locator card.

Moreover, Defendant's established practice of using the "remarks" section on inmates' locator cards to identify safety concerns overrides Plaintiff's limited constitutional liberty

---

[1] This is a reference to Security Housing Classification, which is a housing classification used in state prison.

{02099184.DOCX}

1

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

interests. The remarks annotated on Plaintiff's card were legitimate and accurate. Further, the "remarks" were not used to discipline or otherwise restrict Plaintiff's privileges while housed in SCMJ, but used by jail deputies to identify concerns affecting officer and inmate safety. Accordingly, Defendant should be granted deference in implementing a practice which is intended to create institutional security for personnel and inmates alike.

## II.

## PROCEDURAL BACKGROUND

This Court made clear in its March 19, 2018 Order that "this action will proceed on plaintiff's due process claims against defendants Sgt. Alexander and Sacramento County Sheriff's Department."[2] [EFC 29.] Since that time, Defendant has engaged in extensive discovery to uncover the facts of Plaintiff's due process claim. Plaintiff evaded his discovery obligations by failing to provide complete responses or produce documents. This culminated in Defendant filing a Motion to Compel Plaintiff's further responses to its Request for Production of Documents and Special Interrogatories. [EFC 58.] The Court partially granted Defendant's Motion, which required Plaintiff to serve amended responses to Defendant's written discovery. [EFC 64.] Plaintiff served amended responses to Defendant's Special Interrogatories, but did not produce any responsive documents.

Ultimately, Defendant failed to comply with the Court's order and instead asked for an extension to respond to Defendant's document requests. [EFC 65.] Defendant opposed Plaintiff's request for an extension, arguing that Plaintiff failed to produce responsive documents in compliance with the Court's Order. [EFC 66.] The Court denied Plaintiff's Motion for an Extension and ordered "within thirty days, defendant shall file a motion for expenses or sanctions." [EFC 68.] Subsequently, Defendant filed a Motion for Terminating Sanctions, which is still pending before this Court. [EFC 71]

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

---

[2] The Court has since granted Plaintiff's Motion to Amend, only insofar as Plaintiff was allowed to substitute Sgt. Gregory for Sgt. Alexander [EFC 68.]

{02099184.DOCX}                                       2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    Thereafter, Plaintiff filed a Motion for Summary Judgment ("MSJ"). [EFC 70.]  Defendant

2    opposed the MSJ. [EFC 75.] Defendant requested that the Court reserve on ruling on Plaintiff's

3    MSJ until Defendant had an opportunity to file its own MSJ. *Id.*

### III.

### FACTUAL BACKGROUND

#### A.  Background Information

Plaintiff is a state prisoner serving a life sentence for two bank robberies, one drug trafficking conviction, and one criminal threat conviction. UMF 1. Since being incarcerated, Plaintiff has a history of violating jail rules and policies. One such incident was in 2002. As explained in internal jail report number 849352330, Plaintiff was booked on attempted murder charges for attempting to throw Deputy Allbee off of a jail tier. The report describes the disciplinary action he received from SCMJ for violating jail policies. UMF 2. He was also convicted in 2009 of gassing a California Department of Corrections and Rehabilitation ("CDCR") employee, resulting in a four year sentence, consecutive to his life sentence. UMF 3. He admittedly has a history of initiating multiple litigations against State and County entities since being incarcerated. UMF 4. Moreover, prior to SCMJ receiving Plaintiff in both June and September of 2013, he had been designated as a Security Housing Unit ("SHU") inmate while in prison custody. UMF 5. SHU inmates are housed in single cell units and require the highest level of security at prisons.  Ex. Q, McCamy's Decl. ⁋4; Ex. P, Plt's Depo. p. 46:4-23.

#### B.  Plaintiff  Housed at SCMJ Twice Between 2013 and 2015

Between 2013 and 2015, Plaintiff was housed at SCMJ during two separate time periods. Plaintiff's was housed at SCMJ from June of 2013 through July of 2013. UMF 6. Plaintiff returned to SCMJ on September 24, 2013 and stayed until June 1, 2015. UMF 7.

After an inmate is booked at SCMJ, he or she is sent to housing classification officers, who determine where the inmate should be housed and what security level the inmate should be designated, including "high," "medium," or "low." See Ex. Q, McCamy Decl. ⁋5. When inmates are brought over from a prison facility, it is Defendant's practice for classification officers to consider the inmate's previous housing status at the prior prison facility and the inmate's criminal

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}                                                     3

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

history, among other things, when determining appropriate housing at SCMJ.  UMF 8. Generally, inmates designated as "high" custody inmates are composed of individuals who committed serious crimes or are known to be assaultive to inmates or personnel. UMF 9.

Defendant determined that Plaintiff should be housed in Total Separation (T-Sep) during June and July of 2013, as well as when he initially came back on September 24, 2013 because of his criminal history and housing status as a SHU inmate in prison. UMF 10. After a period of time, Defendant took Plaintiff out of T-Sep and placed him in general population housing. UMF 11. Defendant also decided to place Plaintiff as a "high" custody inmate because of his extensive criminal history, which included assaultive behavior on prison personnel. UMF 12.

### C.  Plaintiff's Locator Cards

SCMJ creates a locator card for all inmates. Those locator cards are created after an inmate has been booked and receives his or her housing classification at SCMJ. UMF 13. The locator cards are kept on the floor where the inmate is housed. UMF 14.

Locator cards are used by floor deputies who have daily face-to-face and physical contact with the inmates. UMF 15. There is a specific section on the locator card entitled "Charges." UMF 16. The locator cards also allow deputies to provide "remarks."  UMF 17. Under the "remarks" section, Defendant has a practice of annotating locator cards information involving officer or inmate safety concerns. *Id*.

Plaintiff had two locator cards, one created during each of his stays at SCMJ between 2013 and 2015. See Ex. Q, McCamy Decl. ¶8. Plaintiff's first locator card provides four different factual pieces of information in the "remarks" section: (1) "known for gassing;" (2) "tried to throw Dep. Albee off tier in 02!;" (3) "SHU inmate;" and (4) "known for litigation." UMF 18. The "remarks" on Plaintiff's second locator card state: "CAUTION per Sgt Epperson se [unclear] 849352330[3] (2002) (664)187 on Deputy." UMF 19. The "remarks" on Plaintiff's locator cards followed Defendant's practice of providing information involving officer and inmate safety concerns.  UMF 20. The "remarks" were not used to discipline or otherwise restrain Plaintiff's

---

[3] This is a reference to the SCMJ report regarding the 2002 incident involving Deputy Allbee.

{02099184.DOCX}

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

privileges while incarcerated at SCMJ. UMF 21. Rather, the annotated notes on Plaintiff's locator cards were intended for institutional, officer, and inmate safety reasons.  UMF 27.

### D.  Plaintiff Files Instant Civil Action

In 2016, Plaintiff filed the instant civil action, where his only remaining claim alleges that Defendant violated his due process rights because of the information that was contained on his locator cards. [EFC 29.] To uncover facts about his claim, Defendant served Plaintiff with Special Interrogatories. UMF 22. In response to those Interrogatories, Plaintiff specifically claims with regard to the information that was on his locator card: "Defendants deliberately made it appear that I was at SCMJ for that charge [664/187], without annotating the disposition of that charge…." UMF 23. When asked how he was negatively impacted by the information on his locator card, Plaintiff identified the following:

1.   I was maintained in Total Separation status
2.   Forced to recreate alone
3.   Forced to be in a cell alone
4.   Forced to go to dayroom alone
5.   Forced to go to visits alone
6.   Maintained in leg irons and wrist restraints while at Court for hours at a time
7.   Believed by other Deputies to be a threat to officer safety and security
8.   Illegally placed into a sober cell with drunks in violation of Title 15 California Code of Regulations
9.   Deprived of access to the law library although I was represented in pro-per
10.  Deputies viewed me in a dangerous light and magnified normal conduct into misconduct
11.  Denied medical care for serious medical needs
12.  Fake Incident Reports
13.  Looked at by all personnel who read the locator card as an animal
14.  Feelings of hopelessness
15.  Nightmares because of the illtreatment [sic] caused me to relive the abuse, physical attack upon me by SCMJ Deputies
16.  [sic] Office of District Attorney used the charge in its Opposition to me being re-sentenced…
17.  [sic] Designated as "High Custody"…
18.  [sic] I suffer from deep depression
19.  [sic] I was angry…
20.  [sic] Forced to be in cell confinement
21.  [sic] Forced to be cellmates with dangerous inmates
22.  [sic] Commissary not delivered

{02099184.DOCX}                                              5

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

23. [sic] Impeded Settlement Conference

UMF 24.

## IV.

## LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." F.R.C.P. 56(a). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248. There is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Anderson,* 477 U.S. at 248. Conclusory, nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing facts." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888-89, 110 (1990).

## V.

## ARGUMENT

Plaintiff claims that SCMJ took action against him *because of* information on his locator cards during his two stays at SCMJ between 2013 and 2015.  Factually, Plaintiff's claims fail as to information on the locator cards was true legally. Plaintiff's due process claim fails because Plaintiff cannot prove the existence of a protected liberty interest. Moreover, Plaintiff cannot prove that SCMJ imposed any condition that was an "atypical and significant hardship" in relation to ordinary incidents of prison life.

Even if any protected liberty interest existed, that interest is restricted as to give Defendant wide-ranging deference to implement practices to preserve internal order and maintaining institutional security. Defendant's practice of annotating locator cards with information that impacted order and security falls within that scope of discretion.

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}                                          6

Finally, Plaintiff cannot show that Defendant's actions were arbitrary and unreasonable, or having no substantial relation to the safety and general welfare of SCMJ. Plaintiff cannot do so because Defendant annotated Plaintiff's locator cards with accurate information for the safety of inmates and jail personnel.

A.   **Plaintiff's Due Process Claim Fails to Establish the Existence of Protected Liberty Interests**

The Due Process Clause provides procedural protections to inmates who can establish that a liberty interest is at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty [or property] interest for which the protection is sought. *Id.* "To establish a violation of substantive due process ..., a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir.1996). However, to establish a substantive due process claim, an inmate must first establish deprivation of due process protected liberty interests. *Dennison v. Ryan*, 522 Fed.Appx.414, 417 (9th Cir. 2013).

Plaintiff does not have a protected liberty interest, and, as such, his due process claim fails. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).

In determining whether state law confers a liberty interest on inmates, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84.

To establish whether a prison hardship is atypical and significant, the court relies upon a condition or combination of conditions that requires case-by-case, fact-by-fact consideration.

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}                                                7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Keenan v. Hall*, 83 F.3d 1083, 1089 (1996). In *Ramirez v. Galaza,* 334 F.3d 850, 862 (2003), the Ninth Circuit determined that the *Sandin* Court had identified the factors to consider as follows:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

Here, Plaintiff claims to have experienced negative conditions while at SCMJ because of information contained on his locator cards.  Specifically, Plaintiff claims: "Defendants deliberately made it appear that I was at SCMJ for that charge [664/187], without annotating the disposition of that charge…." UMF 23. As a result, Plaintiff identifies 23 ways in which he was negatively impacted, or in other words, received "atypical and significant hardships." UMF 24.

Ultimately, Plaintiff's claims that Defendant imposed atypical and significant prison conditions upon him *because of* information on his locator card amount to nothing more than conclusions unsupported by any facts or evidence.  Even if he proffers evidence, his claims do not amount to an atypical and significant hardship in relation to ordinary incidents of prison life.  See *Sandin* 515 U.S. at 481-84.  Certainly, nothing identified by Plaintiff amounts to government action that was "clearly arbitrary and unreasonable."

The undisputed evidence shows that Defendant made decisions, as they related to Plaintiff, for legitimate reasons, none of which were taken *because of* information contained on Plaintiff's locator card.

### 1.    Defendant's Decision to Place Plaintiff in Total Separation Comported with Its Discretionary Authority

Many of Plaintiff's claims of "atypical hardships" arise out of being temporarily housed in T-Sep housing. UMF 24, Nos. 1, 2, 3, 4, 5, 6, 15, 17, 20, and 21.  There is no protected liberty interest in not being confined in the security housing unit where placement and retention therein were "within the range of confinement to be normally expected" by prison inmates. *Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000). The Due Process Clause does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}

8

segregation.  See *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); see also *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence). Moreover, T-Sep housing and "high" inmate classifications are not atypical and significant to prison life because the duration of each condition and the degree of restraint imposed merely "mirrored" the conditions imposed on other inmates, and thus comported with Defendant's discretionary authority. See *Ramirez,* 334 F.3d at 862.

Indeed, many inmates are housed in total separation when booked into the SCMJ, as well as classified as "high" inmates. In fact, there were floors designated for inmates housed as T-Sep. This is not atypical to prison life.  It is Defendant's practice that T-Sep inmates live in a single-person cell and conduct activities in the jail alone, including, but not limited to recreation, dayroom, privileges, and visitations. Ex. Q, McCamy Decl. ¶9-10. T-Sep inmates also are maintained in arm and leg shackles when transported to and from court, as well as while waiting for court proceedings. *Id.* Defendant's practices apply to all inmates housed in T-Sep and are done for the safety and security of inmates and staff alike. *Id.* Thus, Plaintiff's due process claims stemming from his status as a T-Sep inmate is not an atypical and significant prison condition since the conditions were imposed equally on other inmates in the same manner. Accordingly, Plaintiff's due process claim fails on these grounds.

It is also undisputed that Plaintiff was removed from T-Sep housing and placed in general population on December 31, 2013. See UMF 11. Although he was still designated as a "high" security inmate, he was allowed to have a cell mate, as well as be around other inmates during dayroom, recreation, and visitations.  Ex. Q, McCamy Decl. ¶11. Again, nothing about his general population housing classification was atypical and significant to ordinary incidents of prison life.

a.  Defendant Had Legitimate Reasons for Initially Classifying Plaintiff in T-Sep Housing

To the extent Plaintiff's due process claim seeks to challenge his classification as a T-Sep inmate, the Ninth Circuit found that an inmate challenging his housing status was subject to the

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1    "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). *Bruce v. Ylst,* 351

2    F.3d 1283, 1287 (9th Cir.2003). Further, the Ninth Circuit noted, "[u]nder *Hill,* we do not examine

3    the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the

4    relevant question is whether there is any evidence in the record that could support the

5    conclusion.'" *Id.*

6        Here, Defendant had legitimate reasons for placing Plaintiff originally as a T-Sep inmate.

7    An inmate's housing classification is determined by Defendant's classification officers after they

8    are booked into the jail.  When inmates are brought over from a prison facility, it is Defendant's

9    practice to consider the inmate's previous housing status at the prior prison facility and the

10   inmate's criminal history, among other things. UMF 8. It is undisputed that Plaintiff came into the

11   SCMJ as a SHU inmate.  UMF 5. SHU inmate means Plaintiff was designated at the highest level

12   of security as an inmate in prison.  SHU inmates are considered dangerous and a threat to security.

13   Plaintiff also had a known history of violent acts against jail staff.  SCMJ disciplined Plaintiff for

14   violating jail policies after a hearing where it was found that Plaintiff attempted to throw a deputy

15   over a second-tier balcony in 2002. UMF 2. Moreover, Plaintiff had been convicted of gassing a

16   CDRC employee in 2009, which resulted in a four year sentence, consecutive to his current life

17   sentence. UMF 3. Plaintiff was also serving a life sentence for two bank robbery convictions, a

18   drug trafficking conviction, and a criminal threats conviction. UMF 1. Based on the totality of the

19   circumstances, Defendant designated Plaintiff originally as T-Sep because of his SHU housing

20   status at prison and his prior criminal history, which included assaultive behavior on jail

21   personnel. See UMFS 1, 2, 3, 5, and 10.

22       Ultimately, nothing about Plaintiff's T-Sep or "high" custody inmate status was atypical to

23   prison life.  See *Gordon v. Maycayo*, 43 Fed. Appx. 67 (9th Cir. 2002) (state inmate did not show

24   violation of his due process rights because he failed to present any evidence comparing his

25   conditions of confinement during the 60 days to conditions of his prior prison life). Moreover,

26   Defendant had legitimate reasons for placing Plaintiff in those classifications. Indisputably,

27   nothing about those classifications had anything to do with information on his locator card. In fact,

28   his locator card was created after his original housing classifications into T-Sep. UMF 13. Thus, it

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

is entirely impossible for that classification status to be determined *because of* information contained on a locator card, which was not created at the time of classification. *Id.* Subsequently, Defendant removed him from T-Sep housing and placed him into general population. UMF 11. Surely Plaintiff is not arguing that removing him from T-Sep created a negative impact.

b.  <u>Being Housed With Dangerous Individuals is Not Atypical or Significant to Prison Life</u>

To the extent Plaintiff claims he was cellmates with dangerous individuals as a "high" custody inmate that is also not atypical and significant to prison life. Inmates classified as "high" are generally composed of individuals who committed serious crimes and are being incarcerated for those crimes. UMF 9. Likewise, others may consider Plaintiff a "dangerous" inmate given his extensive criminal history. Nevertheless, Plaintiff never submitted a grievance about being confined to a cell with dangerous inmates. Instead, Plaintiff complained once that he was being housed "in close proximity" to gang members while as a T-Sep and submitted another complaint that inmates were not following jail staff's orders and disrupting dayroom time. <u>Ex. E</u>, Plaintiff's Complaints Re: Inmates. Defendant responded accordingly to Plaintiff's complaints. Defendant advised Plaintiff that he did not have a cellmate while housed as a T-Sep. *Id.* Defendant further advised Plaintiff he has received proper dayroom time. *Id.*

Plaintiff was also involved in an incident report where another inmate was found to be the initial aggressor. <u>Ex. F</u>, Incident Report. That inmate was removed and disciplined for those actions.  Even after that incident, Plaintiff never complained that he was housed with dangerous inmates.

2.  **Plaintiff's Placement in Sobering Cell Not Based on Information on Locator Cards**

Plaintiff claims he was "illegally placed into a sober cell with drunks" because of information on his locator card. UMF 24, No. 8. Defendant has records of this incident, providing that while going through the booking process on September 24, 2013, Defendant placed Plaintiff in a sobering cell at booking because he had a suicide prevention flag in his file and needed to be

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}

11

on suicide watch before being placed in classified housing.[4] Ex. G, Information Report. As previously provided, locators cards are created after an inmate is booked into jail and receives his or her housing classification. UMF 13. Accordingly, it is impossible for booking officers to place Plaintiff into a sobering cell *because of* information on his locator card, since the locator card was not created at the time Plaintiff was booked.

### 3.  Plaintiff Was Not Deprived of Law Library Access or Legal Mail

Plaintiff also claims that he was denied law library access and legal mail because of information contained on his locator card.  UMF 24, No. 9. There is no established minimum requirement for satisfying an inmate's right to access a law library; rather, "a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access." *Sands v. Lewis,* 886 F.2d 1166, 1169 (9th Cir.1989) (internal quotations omitted). Further, although an inmate has a right to legal mail, "isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995).

Ultimately, there is no evidence to support Plaintiff's claim. Defendant has a practice of hand-delivering legal materials to inmates who are housed in T-Sep because their physical presence in the law library is deemed too much a risk to the safety of jail staff.  UMF 25. This practice may continue even after an inmate is no longer housed in T-Sep.  See Ex. Q, McCamy Decl. ¶13.

On July 2, 2013 and thereafter, jail staff understood Plaintiff to be on pro-per status, which required that Plaintiff be provided a 15 minute telephone call per day and access to law library materials. See Ex. Q, McCamy's Decl. ¶13; Ex. H, Complaints and Responses Re: Legal Materials. To facilitate those Court Orders, Defendant advised Plaintiff that staff would deliver legal materials directly to his cell. *Id*. At that time, Plaintiff had been designated into T-Sep

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

---

[4] Immediately upon entering the sobering cell, Plaintiff became argumentative with staff and inmates. He also threatened other inmates. He was immediately escorted to a segregation cell.

{02099184.DOCX}                              12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1  housing, and in accordance with Defendant's practice, Defendant determined that Plaintiff's

2  physical presence in the law library was deemed too much a risk to the safety of jail staff. *Id.*

3      Plaintiff understood the procedure, as he requested various legal material, up to and

4  including a Bible, which were delivered to his cell. See <u>Ex. Q</u>, McCamy Decl. ¶13; <u>Ex. H</u>, Legal

5  Material Complaints and Responses. However, Plaintiff routinely filed grievances about his access

6  to legal mail. See <u>Ex. Q</u>, McCamy Decl. ¶14; <u>Ex. I</u>, Legal Mail Complaints and Responses.

7  Defendant responded to each grievance, where SCMJ staff had to routinely explain to Plaintiff the

8  procedures for sending and receiving legal mail, as well as policies on acceptable legal

9  publications allowed in the jail. *Id.* At some point, SCMJ even arranged for an investigator to

10  assist Plaintiff in his legal matters to facilitate jail policies and procedures as they related to legal

11  mail. *Id.*

12      Ultimately, there is no evidence that Defendant's decision to hand-deliver legal materials

13  to Plaintiff's cell restricted his access to the law library or legal mail.  Further, there is absolutely

14  no evidence to suggest that Plaintiff was denied access or that such denial was *because of*

15  information contained on his locator card. There is also no evidence showing that any of the

16  deputies responsible for deciding this alternative method to giving Plaintiff his legal resources had

17  any knowledge about the information contained on his locator card.  For those reasons, Plaintiff's

18  claim fails.

19      **4.    Plaintiff Was Not Deprived of Medical Care for Serious Medical Needs**

20      Plaintiff also claims that he was deprived of medical care because of information on his

21  locator card. UMF 24, No. 11. Defendant's records reveal that Plaintiff filed many grievances on

22  issues related to his medical care. See <u>Ex. J</u>, Complaints and Responses Re: Medical Care. Each

23  grievance specified certain conditions that Plaintiff wanted jail personnel to order. *Id.* However,

24  Plaintiff is not permitted to dictate his medical treatment. *Bowring v. Godwin,* 551 F.2d 44, 47–48

25  (4th Cir. 1977). As a matter of law, differences of opinion between prisoner and prison doctors

26  fails to show deliberate indifference to serious medical needs. *Jackson v. McIntosh,* 90 F.3d 330,

27  332 (9th Cir.1996).

28

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}                    13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

1  Defendant employs medical staff to provide assistance to inmates housed at SCMJ.  Ex. Q,

2  McCamy Decl. ¶15. Inmates usually receive medical care in a separate area, which is not near the

3  floors where the inmates are housed.  *Id.* Deputies typically transport the inmates to and from the

4  medical area of SCMJ when medical treatment is needed. *Id.*

5  The undisputed evidence shows that Plaintiff filed a number of grievances about his

6  medical care, which were appropriately responded to by medical personnel. See Ex. J, Medical

7  Care Complaints and Responses.  Each response detailed appropriate treatment plans that were in

8  place to treat Plaintiff's medical issues. *Id.* There is no evidence to suggest that medical personnel

9  knew about the information contained on Plaintiff's locator card, much less ordered specific

10  medical treatment *because of* that information.  Plaintiff cannot present such evidence because his

11  locator cards stayed on the jail floor where he was housed, not in the jail medical facilities. UMF

12  14. Nevertheless, medical personnel's responses to Plaintiff's medical grievances provide that

13  Plaintiff's medical needs were appropriately treated based solely on the information contained in

14  his medical records.  See Ex. J, Medical Care Complaints and Responses. Accordingly, this claim

15  fails.

16  **5.  Defendant Initiated Incident Reports Against Plaintiff for Legitimate Reasons**

17  Plaintiff also claims that Defendant initiated "fake incident reports" against him.  UMF 24,

18  No. 12. From 2013 through 2015, Plaintiff was involved in five incident reports at SCMJ. See Ex.

19  Q, McCamy Decl. ¶17.  One of those incidents involved another inmate, who was deemed as the

20  initial aggressor against Plaintiff. Two other incident reports were characterized as informational

21  only, and no disciplinary action was taken. Another incident report provided that Plaintiff was

22  refusing to take his medication. The only incident report where any disciplinary action was taken

23  against Plaintiff occurred after he was found to be insubordinate toward jail staff. Plaintiff was

24  given a hearing on this incident, and it went through two levels of review, where Lieutenant Kolb

25  ultimately determined that Plaintiff's conduct violated jail policy. UMF 26.

26  To the extent Plaintiff claims that the last incident report violated his due process rights, he

27  cannot prevail on this claim as a matter of law. A jail's grievance process does not confer a

28

{02099184.DOCX}  14

substantive right because inmates do not have a right to a particular grievance procedure. *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988). Further, Plaintiff's allegations of "bias" in a jail disciplinary proceeding do not, without more, implicate his constitutional right to due process. See *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).

Plaintiff filed a grievance about this incident report claiming that he had a right to a different grievance officer because Sergeant Epperson could not be impartial. Plaintiff claimed that Sergeant Epperson was involved in a separate jail incident where Plaintiff was accused of violating jail policy for attempting to murder a deputy in 2002. As an initial matter, Plaintiff is not entitled to a particular grievance procedure. Moreover, Lieutenant Kolb reviewed Plaintiff's incident report and grievance after Sergeant Epperson was involved, thereby eliminating any claim of bias as to the final review. See UMF 26. Further, there is no evidence that Lieutenant Kolb found Plaintiff in violation *because of* information on his locator card.  Rather, Lieutenant Kolb's response to Plaintiff's grievance shows that he considered the merits of Plaintiff's actions in determining whether Plaintiff violated jail policies. See *Superintendent Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Finally, there is no evidence that the disciplinary action was atypical and significant to prison life. According, this claim also fails.

### 6.      Plaintiff Was Provided All Required Commissary

Plaintiff also claims that he was denied his commissary because of information contained on his locator card.  UMF 24, No. 20. This claim fails as a matter of law because prisoners have no constitutional right to use the prison commissary. See *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996) *opinion amended on denial of reh'g,* 135 F.3d 1318 (9th Cir.1998) (affirming dismissal of §1983 claim for denial of prison canteen products because "[t]here is no constitutional right to such items").

Moreover, there is no evidence to support this claim.  Plaintiff wrote numerous grievances about not receiving commissary. See <u>Ex. L</u>, Complaints and Responses Re: Commissary. Jail staff responded to each and every grievance. *Id.* Those responses included Plaintiff's failure to follow jail policies, including failing to correctly bubble his inmate reference number on the commissary requests.  *Id.* To the extent Plaintiff did not get his commissary during the discipline imposed for

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

the above-mentioned incident, there is no due process claim where there is a temporary loss of privileges that does not "present a dramatic departure from the basic conditions" of prison life. *Sandin,* 515 U.S. at 485.

### 7.     Defendant Cannot Be Found Liable for Acts Taken By Third-Parties

An inmate's locator card is kept on the floor in which they are housed in. UMF 14. Accordingly, third-parties, such as a Judge, District Attorney, and employees at the California Department of Rehabilitation and Correction do not access SCMJ inmates' locator cards. There is absolutely no evidence that any of these parties had access to Plaintiff's locator card, much less made decisions *because of* the information contained on Plaintiff's locator card.

Although it is not entirely clear what actions Plaintiff claims third-parties took against him, Defendant cannot be liable for a third party's conduct, especially where their conduct was neither directed by Defendant nor shown to be influenced by Plaintiff's locator card. See UMF 24, No. 16.

### 8.     Plaintiff's Conclusory Assertions Will Not Suffice on a Motion for Summary Judgment

Plaintiff claims that deputies viewed him "in a dangerous light" and magnified normal conduct into misconduct." UMF 24, No. 10. Further, he claims that he was "looked at by all personnel who read the Locator Card as an animal." UMF 24, No. 13. He also claims that he experienced abuse and ill treatment because of a "physical attack upon me by SCMJ Deputies." UMF 24, No. 15. Finally, he claims that unspecified deputies impeded an unknown settlement conference. UMF 24, No. 23.

These claims are merely conclusory statements unsupported by any evidentiary facts. These conclusory statements are based on Plaintiff's subjective beliefs, nothing more. Conclusory allegations unsupported by any underlying factual details are insufficient to state a claim for relief under 42 U.S.C. § 1983. *Finley v. Rittenhouse,* 416 F.2d 1186 (9th Cir. 1969). To the extent Plaintiff has alleged any factual details, Defendant submits that those claims have been previously addressed. Accordingly, each purported condition is insufficient to establish a protected liberty interest.

{02099184.DOCX}

16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

### 9. Plaintiff's Claims Regarding Sadness, Anger, Depression, Nightmares, and Hopelessness Are Not Atypical to Prison Life

Again, Plaintiff must allege facts which suggest he was deprived of a protected liberty interest that imposed an atypical and significant hardship on him in relation to ordinary incidents of prison life. See *Sandin,* 515 U.S. at 481-84. Plaintiff's claims that he experienced sadness, anger, depression, nightmares, and feelings of hopelessness are not atypical to prison life. UMF 24, Nos. 14, 15, 18, and 19. These feelings are certainly not atypical to an individual who is serving a life sentence. It is not atypical for someone who knows that they will spend the rest of their life in a penitentiary, instead of with their loved ones and friends, to feel sad, depressed, and hopeless.  Accordingly, Plaintiff fails to establish a protected liberty interest.

### 10. None of Plaintiff's "Atypical" Hardships Will Affect the Duration of His Sentence

To determine whether a prison condition is "atypical and significant," Courts consider whether the condition affects the duration of the prisoner's sentence. *Ramirez v. Galaza,* 334 F.3d 850, 862 (2003). It is undisputed that Plaintiff is serving a life-sentence. UMF 1. Given that, Plaintiff cannot demonstrate how any of the negative conditions will affect the duration of his sentence.  Indeed, he cannot do so because, outside of a change in law or policy, it would be difficult to demonstrate how a life sentence can be reduced.

### B. Defendant's Practice of Annotating Locator Cards Intended to Preserve and Maintain Institutional, Personnel and Inmate Safety

Even if Plaintiff can establish the existence of a liberty right, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the restrained constitutional rights of both convicted prisoners and pretrial trainees." *Bell v. Wolfish,* 441 U.S. 520, 546 (1979). "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier, supra*, 417 U.S., at 823, 94 S.Ct. at 2804. "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel…." *Bell,* 441 U.S. at 547.

{02099184.DOCX}

17

1      Prison administrators should be accorded wide-ranging deference in the adoption and

2   execution of policies and practices that in their judgment are needed to preserve internal order and

3   discipline and to maintain institutional security. *Jones v. North Carolina Prisoners' Labor Union,*

4   *supra*, 433 U.S. at 128, 97 S.Ct. at 2539; *Procunier v. Martinez, supra*, 416 U.S. at 404-405, 94

5   S.Ct. at 1807-1808; *Cruz v. Beto, supra,* 405 U.S. at 321, 92 S.Ct. at 1081; see *Meachum v. Fano*,

6   427 U.S. at 228-229. In evaluating whether a restraint on a prisoner's movement constituted an

7   Eighth Amendment violation, the Supreme Court provided:

8
9          Prison administrators should be accorded wide-ranging deference in the adoption
           and execution of policies and practices that in their judgment are needed to
10         preserve internal order and discipline and to maintain institutional security. That
           deference extends to a prison security measure taken in response to an actual
11         confrontation with riotous inmates, just as it does to prophylactic or preventive
           measures intended to reduce the incidence of these or any other breaches of prison
12         discipline. It does not insulate from review actions taken in bad faith and for no
           legitimate purpose, but it requires that neither judge nor jury freely substitute their
13         judgment for that of officials who have made a considered choice.

14     *Whitley v. Albers,* 475 U.S. 312, 321-322 (1986) (internal citations omitted).

15     Here, the annotated notes on Plaintiff's locator card were intended for institutional, officer,

16  and inmate safety reasons. UMF 27. Locator cards are used by deputies who have face-to-face

17  contact with the inmate, which sometimes involves moving the inmate or being in close physical

18  proximity. UMF 15. The locator cards provide information such as the inmate's name, date of

19  birth, current charges, and movement log. The locator cards also allow deputies to provide

20  "remarks." UMF 17. Under the "remarks" section, Defendant has a practice of annotating locator

21  cards with information involving officer or inmate safety concerns. *Id.* Given that deputies work

22  with hundreds of inmates on any given day, it is impossible for a deputy to know the tendencies of

23  every inmate. However, it is prudent for deputies to be aware if an inmate is known to have violent

24  tendencies, especially if he or she will have physical contact with the inmate. The locator card is

25  one method of informing deputies of an inmate's potentially violent tendencies, as to allow the

26  deputy to take whatever security precautions may be needed to ensure the safety of all personnel

27  and inmates involved.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

1     The "remarks" on Plaintiff's locator cards follow Defendant's practice.  UMF 20. Plaintiff

2  was incarcerated in Sacramento County Jail two separate times between 2013 and 2015. Plaintiff

3  had a locator card for each period. On his first locator card, it provides four different factual pieces

4  of information: (1) "known for gassing;" (2) "tried to throw Dep. Albee off tier in 02!;" (3) "SHU

5  inmate;" and (4) "known for litigation." UMF 18. The second locator card provides: "CAUTION

6  per Sgt Epperson se [unclear] 849352330 (2002) (664)187 on Deputy." UMF 19.

7     Significantly, these remarks are legitimate and accurate. Plaintiff does not dispute the

8  remarks.  See Ex. P, Plt's Depo pp. 156:1 – 158:17 and pp.150:10 – 153:21. Plaintiff admitted that

9  he was convicted of gassing a correctional employee. UMF 3. In 2002, an incident report was

10  prepared at the SCMJ referencing that Plaintiff attempted to murder Deputy Allbee, which

11  involves the same incident report number annotated on Plaintiff's second locator card. UMF 2.

12  Plaintiff was disciplined by the jail for violating policies based on this 2002 report.  *Id.* Moreover,

13  Plaintiff had been previously designated as a SHU inmate by his prior prisons when transported to

14  SCMJ. UMF 5. Plaintiff also has history of filing cases against the County and other State

15  agencies. UMF 4. Significantly, the "remarks" were not used to discipline or otherwise restrain

16  Plaintiff's privileges while incarcerated at the SCMJ. UMF 21.

17     Plaintiff's only claim seems to allege that the annotation referencing an attempted murder

18  on a deputy violated his due process rights. UMF 23. Plaintiff claims that since he was not

19  convicted of the attempted murder change, the information on the locator card was incorrect. *Id.*

20  However, neither locator card indicates that he was <u>convicted</u> of attempting to murder Deputy

21  Allbee in 2002. See UMF 18 and 19. Plaintiff concedes as much as to one of his locator cards. See

22  Ex. P, Plt's Depo. p. 154: 18-25. Plaintiff also admits that that same locator card specifically refers

23  jail deputies to an internal jail report number, which is completely separate from his criminal

24  charges. See Ex. P, Plt's Depo. pp.150:10 – 153:21. This internal jail report number provides the

25  factual circumstances that led to Plaintiff being booked on attempted murder charges and

26  describes the disciplinary action he received from the Sacramento County Jail for violating jail

27  policies. UMF 2. Ultimately, the "remarks" on Plaintiff's locator card in no way indicate that

28  Plaintiff was convicted in a criminal court of attempted murder.

{02099184.DOCX}                                    19

1      Further, Plaintiff's amended responses argue that Defendant's failure to annotate "the

2 disposition" of the 664/187 charge on his locator card (i.e. note that he was not convicted of the

3 charge) made it look like he was in custody on attempted murder charges. UMF 23. Such is

4 nonsensical as the locator card references Plaintiff's actual criminal charges. Plaintiff did submit a

5 grievance with the same complaint. Ex. M, March 18, 2015 Complaint. In response, Sgt. Gregory

6 explained that Plaintiff's current charges would remain on his card. *Id.* Sgt. Gregory also told

7 Plaintiff that the comments would stay on his card for officer safety reasons. *Id.*

8      Sgt. Gregory's response to Plaintiff's grievance was consistent with Defendant's practice

9 of annotating inmate's locator cards with "remarks" related to institutional, officer, or inmate

10 safety concerns. Significantly, the "remarks" on Plaintiff's locator cards had nothing to do with his

11 current charges. There is a specific section on the locator cards entitled "Charges." UMF 16. The

12 charges in that section indicate the inmate's current custody charges. On both of Plaintiff's locator

13 cards, it provided that Plaintiff was in custody between 2013 and 2015 under a "2620 Order to

14 Produce." UMFs 18 and 19. An Order to Produce in no way indicates that Plaintiff was at SCMJ

15 for attempting to murder a deputy.  Ex. R, Rowe Decl. ¶9. Accordingly, Plaintiff's claim that

16 deputies believed he was in custody on attempted murder charges is completely baseless.

17      Ultimately, maintaining security is the upmost goal in correctional facilities. The Court

18 should grant great deference to jail administrators for implementing policies with the intention of

19 preserving and maintaining correctional security and order. The information on Plaintiff's locator

20 cards, including the annotated notes, provided legitimate and accurate information intending to do

21 just that. Even if the annotated notes are inaccurate, Courts have held that inaccurate records

22 maintained by the state, are not, standing alone, sufficient to state a claim of constitutional injury

23 arising under the Due Process Clause. See *Velasquez v. Woods,* 329 F.3d 420, 421-22 (5th Cir.

24 2003) (finding no constitutional right to expunge false information from prison file);  see also *Paul*

25 *v. Davis,* 424 U.S. 693, 711-14 (1976) (holding plaintiff could not challenge in § 1983 action

26 dissemination of information about shoplifting arrest because no protected interest in reputation).

27 *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989) (holding that prisoner has no constitutional

28 guaranteed immunity from being falsely or wrongly accused of conduct that may result in the

{02099184.DOCX}                                  20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1  deprivation of protected liberty interest); see also *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.

2  1986). Accordingly, Defendant's practice of presenting factual information on inmate's locator

3  card for officer safety reasons allows Defendant to retract any restricted constitutional liberty

4  interest Plaintiff may have.  Thus, Plaintiff's due process claim fails.

## VI.

## CONCLUSION

Plaintiff's due process claim is founded on prison conditions that do not prove "atypical

and significant" hardships to ordinary incidents of prison life.  Neither are any of the actions taken

by Defendants "clearly arbitrary and unreasonable." Thus, Plaintiff has not established any

protected liberty interest and his due process claim necessarily fails. Further, Defendants' practice

of annotating Plaintiff's locator cards with significant concerns that affect the safety of the

institution, personnel, and inmates necessarily retracts any restrained constitutional liberty

interests Plaintiff may have had during his incarceration.  Accordingly, for the reasons set forth

above, Defendants' Motion for Summary Judgment should be granted.


Dated:  October 28, 2019                          PORTER SCOTT
                                                  A PROFESSIONAL CORPORATION

                                                  By    */s/ Carl L. Fessenden*
                                                        Carl L. Fessenden
                                                        Barakah M. Amaral
                                                        Attorneys for Defendant

PORTER |SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL. 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}                                   21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

*Smith v. Albee, et al.*
**U.S.D.C. - Eastern District of CA - 2:15-CV-1598 JAM KJN P**

### DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

That on the date below, I served the following: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| XX | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

Plaintiff in Pro Se
Michael Lenoir Smith - P-64019
CALIFORNIA STATE PRISON, CORCORAN (3466)
P.O. BOX 3466
CORCORAN, CA 93212-3466

I declare under penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on October 28, 2019.

   */s/ Jasmyn S. Scarlett*
   Jasmyn S. Scarlett

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02099184.DOCX}                     22