UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LENOIR SMITH,<br><br>Plaintiff,<br><br>v.<br><br>DARREN ALBEE, et al.,<br><br>Defendants. | No. 2:15-cv-1598 JAM KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner, proceeding without counsel. Defendants' motion for terminating and monetary sanctions is before the court. As discussed below, defendants' motion is partially granted.

I. Plaintiff's Second Amended Complaint

Plaintiff alleges that despite being acquitted by a jury of an attempted murder charge, defendants Sgt. Gregory[1] and the Sacramento County Sheriff's Department failed to correct their records. In 2015, plaintiff confirmed that the jail locator card continued to reference the attempted murder charge, despite plaintiff's acquittal. He contends that the failure to correct these records subjects him to continual torment by jail staff, and results in further trumped-up

---

[1] On July 9, 2019, plaintiff's request to substitute the correct individual's name for defendant Alexander's name was granted, and defendant Gregory's name was ordered interlineated in place of Sgt. Alexander's name. (ECF No. 68.) The instant motion was brought by defendants Gregory and the Sacramento County Sheriff's Department.

1

charges against him. Plaintiff claims his efforts to correct such records have failed. Liberally construed, the court found plaintiff's second amended complaint stated a potentially cognizable due process claim against defendants based on their alleged failure to correct their internal records to reflect that plaintiff was acquitted by a jury of the attempted murder charge.

II. Procedural History

This action was filed on July 24, 2015. Following multiple amendments, plaintiff's due process claims against defendant Alexander and the Sacramento County Sheriff's Department contained in his second amended complaint, filed November 17, 2016, were found potentially cognizable, and his remaining claims were dismissed. (ECF Nos. 26, 29.)

On January 2, 2019, the court issued its discovery and scheduling order; all discovery was to be completed by April 26, 2019. (ECF No. 48.) On January 29, 2019, defendant County propounded its first set of special interrogatories and a request for production of documents ("RPD"). (ECF No. No. 58-2 at 9-12 (RPD).)[2] On March 3, 2019, plaintiff wrote defense counsel, stating plaintiff would "be able to respond" to the RPD "after [defendant] comply/respond [sic] with [his] request for documents (set two)." (ECF No. 58-2 at 40.) Defendant County responded to plaintiff's RPD (set two) on February 28, 2019, but plaintiff did not respond to defendant's first RPD.

On March 26, 2019, defendant County filed a motion to compel responses to the first set of special interrogatories and RPD. (ECF No. 58.) In plaintiff's opposition, he complained he was unable to gain access to the law library to make the appropriate photocopies.[3]

---

[2] Defendant County's RPD included twelve requests for production of documents supporting plaintiff's responses to special interrogatory Nos. 5, 9, 13, 17, 21, and 23 (ECF No. 58-2 at 9, 18-19); documents that refer or relate to evidence plaintiff's locator card violated plaintiff's rights, evidence any damages claimed herein; any communication between plaintiff and defendant related to the instant allegations; any and all notes, notebooks, diaries, journals or other documents made by plaintiff that refer or relate to plaintiff's instant allegations; any documents that refer or relate to evidence defendant treats plaintiff differently from similarly situated inmates because of the attempted murder charge on plaintiff's locator card; and any documents that refer or relate to any witness statements pertaining to plaintiff's instant allegations. (ECF No. 58-2 at 11-12.)

[3] In his unauthorized sur-reply, plaintiff stated that he had nearly 300 pages to provide to defendants, but could not provide copies because he only has one copy, and is deprived of

2

Plaintiff was deposed on April 5, 2019. (ECF No. 79-4 at 114.)

On May 14, 2019, the court partially granted defendant County's motion to compel; plaintiff was ordered to file further responses to certain special interrogatories. (ECF No. 64.) Because of the alleged law library access issues, plaintiff was granted an additional thirty days in which to respond to defendant County's RPD, and the court requested the prison litigation coordinator assist plaintiff in gaining timely law library access in order to photocopy the responsive documents. (ECF No. 64.) The court also noted that plaintiff's March 3, 2019 letter to defense counsel suggested plaintiff was engaging in gamesmanship rather than cooperating in good faith in discovery. (ECF No. 64 at 6.) The court warned plaintiff that failure to cooperate in discovery may result in the imposition of sanctions including, but not limited to, a recommendation that this action be dismissed. (ECF No. 64 at 6.) Plaintiff was advised that if his failure to provide the documents was due to an inability to photocopy, plaintiff could have asked defense counsel for an extension of time, or made arrangements with defense counsel to exchange documents at the deposition, where counsel could have assisted plaintiff in obtaining photocopies. (ECF No. 64 at 6-7.) The discovery and pretrial motions deadlines were also extended.

On May 28, 2019, plaintiff wrote defendant County's lawyer stating plaintiff had "enclosed a copy of <u>all</u> documents responsive to your discovery request." (ECF No. 66-1 at 52, 97 (emphasis added).) Plaintiff stated he had "no intent to withhold discovery," and it was the CDCR and its personnel who obstructed plaintiff's efforts to comply. Plaintiff claimed that although the documents were named and numbered as <u>Smith v. CDCR</u>, No. 2:18-cv-02942 KJM AC, such documents "are a part of both cases." (ECF No. 66-1 at 52.)

Despite having purportedly produced all documents, on June 17, 2019, plaintiff filed another request for extension of time to produce the documents. (ECF No. 65.) Plaintiff claimed he was granted only six hours of law library access, despite the court's order, and had not complied fully with the discovery requests. Plaintiff claimed he had about 600 pages of relevant

---

duplicating services by Corcoran State Prison. (ECF No. 62 at 3, 6.)

documents but had provided only 150 pages due to the 50-page limit imposed by the prison law library. Despite completing request for approval forms, the law library supervisor had not approved them, limiting plaintiff to 50 pages per visit (he was able to visit three times – May 23, 2019; May 30, 2019; and June 3, 2019). Plaintiff stated that he provided counsel with a cover letter explaining plaintiff would be providing 50 pages at a time due to the prison's policy. (ECF No. 65 at 6.) Plaintiff claimed he provided the same documents on the same dates to the court in Case No. 2:18-cv-02942 KJM AC because the documents are also relevant and material in that case.[4] Plaintiff further claimed that he was not provided ducats to attend law library despite being scheduled for June 10, 2019, and was denied access on June 13, 2019.

On June 24, 2019, defendant County opposed plaintiff's request for extension of time, noting that they had received three sets of documents totaling 143 pages, each bearing the header of plaintiff's other case, No. 2:18-cv-02942 KJM AC. (ECF No. 66 at 2.) Indeed, review of the documents produced included plaintiff's supplemental complaint filed in case No. 2:18-cv-2942 KJM AC, as well as incident and disciplinary reports dated from 2016-2018 in various correctional facilities, and a copy of plaintiff's habeas petition decision issued from state court.

---

[4] Significantly, court records in Case No. 2:18-cv-02942 KJM AC reflect the following filings by plaintiff during this time frame:

(1) On June 3, 2019, plaintiff's 45-page filing included a 25-page supplemental complaint with 20 pages of exhibits (ECF No. 12);

(2) On June 10, 2019, plaintiff's 52-page filing included a one-page notice of correct name of defendant, accompanied by 51 other documents (ECF No. 13); and

(3) On June 10, 2019, plaintiff submitted a 53-page filing; in the cover letter plaintiff asked the court to excuse his "piecemeal lodging of documents" stating he was only able to receive 50 pages at a time, and noting that "these documents are labeled for another case but apply to Case # 2:18-cv-02942 KJM AC" (ECF No. 14 at 1). However, the attached documents bearing a case number at the top all reference Case No. 2:18-cv-02942 KJM AC. Id. (ECF No. 14 at 4-53.)

A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

4

(ECF No. 66-1 at 2; 5-142.) Moreover, plaintiff failed to produce a pleading or verification responsive to defendant County's RPD. (ECF No. 66 at 2.) Defendant County argued that plaintiff was misusing the discovery process by using his copy privileges to lodge nonresponsive documents intended for a separate case, rather than producing documents responsive to defendant County's RPD.

On July 4, 2019, plaintiff signed a motion for summary judgment, accompanied by 29 pages of exhibits, filed with the court on July12, 2019. (ECF No. 70.)[5]

On July 9, 2019, the court found plaintiff had failed to respond to the RPD propounded by defendant County in January, despite the court's May 14, 2019 order, and denied plaintiff's request for a further extension of time.[6] (ECF No. 68.) Defendant County was granted thirty days to file a motion for expenses or sanctions.

On July 17, 2019, defendants County and Sgt. Gregory filed a motion for terminating and monetary sanctions. Defendants point out that the request for production of documents asked plaintiff to provide documents evidencing that defendant violated plaintiff's due process rights in the Sacramento County Main Jail between 2013 and 2015, as alleged in the operative complaint. Defendants acknowledge receiving "150 largely unresponsive documents from plaintiff on June 10, 2019." (ECF No. 71-1 at 4, citing ECF No. 66-1 at 5-142.) Defendants argue that plaintiff has not served any documents responsive to the RPD, including a pleading or verification form. Importantly, defendants also object that the majority of the documents appended to plaintiff's motion for summary judgment were not produced by plaintiff to defendants through discovery. (ECF No. 71-1 at 4; 71-2 at 2.) In addition to terminating sanctions, defendants request

---

[5] On July 12, 2019, plaintiff also filed a response to defendants' opposition to plaintiff's motion for request for extension of time. (ECF No. 69.) However, plaintiff's response was signed on July 4, 2019, and the appended proof of service, which notes only the service of plaintiff's motion for summary judgment, was dated July 8, 2019 (ECF No. 69 at 23). Defendants' opposition was filed on June 24, 2019. Under Local Rule 230(l), plaintiff's reply was due seven days later, June 30, 2019. But because June 30, 2019 is a Sunday, plaintiff had until Monday, July 1, 2019, to present his reply to prison authorities for mailing. Because plaintiff's reply is untimely filed, the court disregards the filing (ECF No. 69).

[6] Plaintiff's motion to amend was also denied, and his request to substitute Sgt. Gregory in place of Sgt. Alexander as a defendant was granted. (ECF No. 68.)

5

reimbursement of $1,440.00 in attorneys' fees incurred in bringing the motion. (ECF No. 71-2 at 2.)

On July 29, 2019, plaintiff filed his opposition to the motion for terminating sanctions. (ECF No. 74.) Plaintiff asks the court to forward to defendants plaintiff's motion for summary judgment and attached exhibits. (ECF No. 74 at 2.) Plaintiff states that the documents he produced to defendants were accompanied by plaintiff's letter explaining that such documents were responsive to the RPD and request for special interrogatories, despite bearing the case number of his other case. Plaintiff now argues that the "relevant documents demonstrate the pain and suffering caused by the defendants' deliberate indifference not only in Sacramento County Main Jail but also in the CDCR." (ECF No. 74 at 2.) Plaintiff reiterates his claim that his law library access has been impeded by the CDCR. Plaintiff contends that he has been diligent, the merits of his case warrant ruling on the merits, and that it would not be fair, just or equitable to impose sanctions for plaintiff's inaction because it was caused by CDCR personnel. (ECF No. 74 at 2-3.)[7] Plaintiff's opposition was dated July 23, 2019. (ECF No. 74 at 3.)

Defendants did not file a reply.

III. Defendants' Motion for Terminating and Monetary Sanctions

As set forth above, defendants move for sanctions against plaintiff for his willful failure to comply with the court's May 14, 2019 order, and requests monetary sanctions be imposed in the amount of $1,440.00 for fees incurred in bringing such motion. (ECF No. 71-1 at 2.)

////

////

---

[7] Significantly, court records show that in July, plaintiff filed the following documents in Case No. 2:18-cv-02942 KJM AC:

(1) On July 18, 2019, plaintiff's 49-page filing included his 13-page motion for injunctive relief, and 35 exhibits (ECF No. 18);

(2) On July 29, 2019, plaintiff's 314-page filing included his 44-page amended complaint, and 270 exhibits (ECF No. 19); and

(3) On July 29, 2019, plaintiff filed a six-page "motion of apology" (ECF No. 20).

6

A. <u>Legal Standards Governing Sanctions</u>

Broad sanctions may be imposed against a person or party for failure to obey a prior court order compelling discovery. Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey an order to provide or permit discovery, the Court may issue further just orders, which may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(A). The Court also may dismiss the action or proceeding in whole or in part. <u>Id.</u> Dismissal and default are such drastic remedies, they may be ordered only in extreme circumstances -- i.e., willful disobedience or bad faith. <u>In re Exxon Valdez</u>, 102 F.3d 429, 432 (9th Cir. 1996). Even a single willful violation may suffice depending on the circumstances. <u>Valley Eng'rs Inc. v. Elec. Eng'g Co.</u>, 158 F.3d 1051, 1056 (9th Cir. 1998) (dishonest concealment of critical evidence justified dismissal).[8]

Additionally, Local Rule 110 provides that "[f]ailure . . . of a party to comply . . . with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." <u>Id.</u> District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." <u>Thompson v. Hous. Auth.</u>, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam). Terminating sanctions may be warranted where "discovery violations threaten to interfere with the rightful decision of the case." <u>Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 482 F.3d 1091, 1097 (9th Cir. 2007).

B. <u>Standards Governing Terminating Sanctions</u>

District courts retain broad discretion to control their dockets and "[i]n the exercise of that power they may impose sanctions, including where appropriate, default or dismissal." <u>Adams v. California Dep't of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. 2007)[9] (brackets in original)

---

[8] The dismissal sanction is not limited to claims against the defendant who propounded the discovery. The court has discretion to order dismissal against all defendants prejudiced by plaintiffs' discovery violations (e.g., where one was relying on discovery efforts undertaken by the other). <u>Payne v. Exxon Corp.</u>, 121 F. 3d 503, 510 (9th Cir. 1997).

[9] <u>Adams</u> was overruled on other grounds by <u>Taylor v. Sturgell</u>, 553 U.S. 880, 904 (2008).

(quoting Thompson, 782 F.2d at 831). "[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985) (internal quotations and citation omitted); see, e.g., Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (upholding dismissal where party engaged in deceptive practices that undermined the integrity of the proceedings). But such a harsh penalty "should be imposed as a sanction only in extreme circumstances." Thompson, 782 F.2d at 831 (citing Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). Courts have dismissed an action with prejudice for various reasons. See e.g., Malone v. United States Postal Service, 833 F.2d 128, 130-31 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson, 779 F.2d at 1424 (dismissal for failure to prosecute and for failure to comply with local rules); Sanchez v. Rodriguez, 298 F.R.D. 460, 464 (C.D. Cal. 2014) (applied terminating sanctions for pro se plaintiff's failure to respond to discovery requests).

Accordingly, the Ninth Circuit permits imposition of such terminating sanctions only after the district court has weighed: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." Thompson, 782 F.2d at 831; Conn. Gen. Life Ins. Co., 482 F.3d at 1096 ("Only 'willfulness, bad faith, and fault' justify terminating sanctions.") (quoting Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)).

Plaintiff is a pro se prisoner, and the court is mindful of precedent directing lenience in the interpretation of plaintiff's pleadings. The pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Such lenience is important in a civil rights case, where "the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (The rule of liberal construction is "particularly important in civil rights cases."). Nevertheless, while courts construe pleadings liberally in favor of pro se litigants, pro se plaintiffs

8

remain bound by the applicable procedural rules. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (overruled on other grounds by Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012)). "A party's lack of counsel may be considered in evaluating the willfulness of discovery violations and the failure to obey orders and in weighing the other factors regarding dismissal, but pro se status does not excuse intentional noncompliance with discovery rules and court orders." Sanchez, 298 F.R.D. at 470 (collecting cases).

   C. Prior Warnings

On April 18, 2018, the parties were warned that the failure of any party to comply with the Federal Rules of Civil Procedure or the Local Rules of Court may result in the imposition of sanctions including, but not limited to, dismissal of the action or entry of default. (ECF No. 30 at 5, citing Fed. R. Civ. P. 41(b).)

On May 14, 2019, plaintiff was warned that his failure to cooperate in discovery may result in the imposition of sanctions, including, but not limited to, a recommendation that this action be dismissed. (ECF No. 64 at 6.)

   D. Discussion

      1. Was plaintiff's failure to cooperate in discovery willful?

Before imposing terminating sanctions, due process requires that a Court find that a litigant's conduct was the result of "willfulness, bad faith, or fault." Hyde & Drath v. Baker, 24 F.3d 1162, 1167 (9th Cir. 1994) (citing Wyle v. R.J. Reynolds Indus., 709 F.2d 585, 589 (9th Cir. 1983)). To find that a litigant has acted with "willfulness, bad faith, or fault," a court need only find that the failure to participate in discovery was "disobedient conduct not shown to be outside the control of the litigant." Fjelstad, 762 F.2d at 1341. The willfulness standard simply requires that the "punished conduct [is] within the litigant's control." Id. On the other hand, if the failure to produce is the result of circumstances outside of the recalcitrant party's control or an inability to fulfill the party's litigation obligations, dismissal is not proper. United States v. Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1369 (9th Cir. 1980).

In light of plaintiff's initial claim of limited access to the law library, the court declined to grant defendants' motion to compel responses to the RPD, and instead granted plaintiff an

extension of time to respond. However, despite the court's warning in such order, plaintiff submitted over 100 pages of documents to defendants that were nonresponsive to the RPD, and appeared destined for filing in plaintiff's other case, Smith v. CDCR, No. 2:18-cv-02942 KJM AC, as evidenced by plaintiff's June 3, 2019 filing of the supplemental complaint (ECF No. 12), followed by two more filings of over 50 pages on June 10, 2019 (ECF Nos. 13, 24), all in his other case. Id.

Plaintiff's sole argument that he produced such documents in this case because such documents evidence his pain and suffering caused by defendants' deliberate indifference appears to be his belated attempt to justify his actions and is unpersuasive for several reasons. First, plaintiff's cover letter appended to the produced documents did not explain such connection, or otherwise address the 12 requests included in the pending RPD. Second, the instant action is not proceeding on an Eighth Amendment claim involving a determination of deliberate indifference; rather, plaintiff is pursuing a due process claim where he must demonstrate the deprivation of a protected liberty interest. Sandin v. Conner, 515 U.S. 472, 483-84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause."). Such interests are "generally limited to freedom from restraint which . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Third, the documents plaintiff provided included administrative appeals, and incident and disciplinary reports dated from 2016 to 2018 in various state prisons, as well as a copy of plaintiff's habeas petition from state court. Such documents do not address plaintiff's due process claim raised in this court. Liberally construed, some of the documents could be arguably responsive to defendants' request for documents pertinent to plaintiff's claim for damages, but the administrative grievances, forms setting forth plaintiff's external movements, and the state court's ruling on plaintiff's habeas petition seeking sentencing relief under Proposition 57 are wholly unrelated to plaintiff's due process claim in this action or to damages. But even giving plaintiff credit for providing documents pertaining to damages, he failed to address the remaining 11 requests in the RPD propounded in January of 2019. Plaintiff provided no additional response addressing the remainder of the requests for production, identifying which responses the

10

documents addressed, or conceding that he has no documents for certain requests, if such is the case. Thus, it is unclear whether plaintiff has other documents supporting his claims, identifying witnesses, or otherwise.[10]

Indeed, plaintiff's first motion for summary judgment demonstrates that he did have other documents. Appended to plaintiff's first motion for summary judgment are documents from 2015 that plaintiff did not provide to defendants through discovery, and were not included in the documents provided in plaintiff's response to the RPD submitted after the court's May 14, 2019 order. While some of the documents appended to his motion are clearly marked with exhibit numbers from plaintiff's deposition or bear defendants' Bates numbers, others include no such markings (ECF No. 70 at 16-35). Plaintiff offers no explanation for why such documents were not provided in his first round of photocopies, or not offered at his deposition, yet he chose to rely on such undisclosed documents in support of his dispositive motion. Plaintiff's filing of a dispositive motion supported by documents not provided to defendants through discovery supports the court's finding that plaintiff's actions were willful and intentional, and that he has acted in bad faith. Further, plaintiff's continued claims that he was deprived of law library access to make photocopies are belied by his multiple filings in his other action. See No. 18-cv-02942 KJM AC (ECF Nos. 12-14.) Plaintiff's filings in his other action further demonstrate that plaintiff prioritized his filings in his other action over his obligation to cooperate in good faith discovery in this action.

### 2. Do the five factors support terminating sanctions?

Because plaintiff's failure to respond to defendants' RPD was willful, the undersigned must evaluate whether the five factors weigh in favor of imposing terminating sanctions. Such

---

[10] The record reflects varying accounts of the documents plaintiff has in his possession that he intended to disclose. For example, on May 5, 2019, plaintiff claimed he had nearly 300 pages to provide to defendants. (ECF No. 62 at 3, 6.) On June 17, 2019, plaintiff claimed he had about 600 pages of relevant documents to provide, of which he had provided 150 pages. (ECF No. 65 at 2.) Yet, on May 28, 2019, in his letter to defense counsel, plaintiff stated he had enclosed "all" documents responsive to defendants' discovery request. (ECF No. 66-1 at 52, 97.) Then, on July 4, 2019, plaintiff submitted previously-undisclosed documents in support of his motion for summary judgment. (ECF No. 70.)

11

factors provide a "way for a . . . judge to think about what to do," rather than "a series of conditions precedent before the judge can do anything." In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006), quoting Valley Eng'rs, 158 F.3d at 1057. Generally, the key factors in this evaluation are the risk of prejudice and the availability of alternative sanctions. Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990).

Despite plaintiff's actions and omissions in this action, the undersigned does not find that terminating sanctions are warranted at this juncture. Having reviewed the record, including defendants' now pending motion for summary judgment, it does not appear that defendants would be prejudiced if this case is decided on the merits, and general policy favoring disposition of cases on their merits always weighs against terminating sanctions. Yourish, 191 F.3d at 992 (citation and internal quotation marks omitted). Defendants have already incurred the expenses of bringing the instant motion as well as their dispositive motion, and had benefit of the documents appended to plaintiff's motion for summary judgment over four months before filing defendants' motion for summary judgment. Moreover, as set forth below, the undersigned finds that lesser sanctions would be satisfactory.

### 3. Alternative Sanctions

Because plaintiff's motion for summary judgment, filed July 12, 2019, was supported by documents not disclosed through discovery, the undersigned denies plaintiff's motion as a sanction for his reliance on documents not disclosed to defendants in the discovery process.

In addition, based on plaintiff's willful actions and omissions set forth above, the undersigned finds it appropriate to order monetary sanctions against plaintiff. Fed. R. Civ. P. 37(d)(3). The court has reviewed the monetary sanctions sought by counsel for defendants and finds that 7.2 hours at the rate of $200.00 per hour for a total of $1440.00 in fees in preparing the instant motion is reasonable. (See ECF No. 71-2 at 2.) Based on the instant record, the undersigned finds that defendants' motion was substantially justified based on plaintiff's initial failure to respond, and his subsequent failure to adequately respond to the RPD (set one). Thus, plaintiff is required to pay $1,440.00 to counsel for defendants because the plaintiff's failure to respond was not substantially justified. Fed. R. Civ. P. 37(a)(5)(A). The court must also consider

whether "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5(A)(iii). Because plaintiff's actions and omissions were willful, the court finds an award of expenses to be just and required under Rule 37(d)(3). The undersigned has considered the Ninth Circuit's decision that it is an abuse of discretion to order a sanction which cannot be performed. <u>Thomas v. Gerber Prod.</u>, 703 F.2d 353, 357 (9th Cir. 1983). In fact, plaintiff is incarcerated and proceeding in forma pauperis due to his indigency.[11] In light of <u>Thomas</u>, the court stays the award of expenses. However, defendants may move to lift the stay and enforce the order of monetary sanctions and expenses upon a showing that plaintiff has the ability to pay $1440.00.

IV. <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that defendants' motion for terminating and monetary sanctions (ECF No. 71) is granted in part and denied in part as follows:

1. Defendants' motion for terminating sanctions is denied;

2. Plaintiff's motion for summary judgment (ECF No. 70) is denied without prejudice;

3. Defendants' motion for monetary sanctions is granted, and defendants' expenses in the amount of $1440.00 are assessed against plaintiff to be paid to defendants;

4. The order assessing monetary sanctions and expenses in the amount of $1440.00 is stayed; and

5. Defendants may move to lift the stay and enforce the order of monetary sanctions and expenses upon a showing that plaintiff has the ability to pay $1440.00.

Dated: January 17, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/smit1598.sanc

---

[11] Plaintiff's now outdated trust account statement reflects no regular or sporadic deposits, and plaintiff owes restitution in excess of $10,000.00. (ECF No. 7 at 4-5.)

13