1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL LENOIR SMITH,                      No.  2:15-cv-1598 JAM KJN P

12                  Plaintiff,

13        v.                                     ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   SGT. GREGORY, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pursuant to the court's screening order, this action proceeds on plaintiff's

19   due process claims against defendant Gregory and the County of Sacramento.  (ECF No. 26.)

20   Cross-motions for summary judgment are before the court.

21        As discussed below, the undersigned recommends that plaintiff's motion for summary

22   judgment be denied and defendants' motion for summary judgment be granted.

23   I.  Background

24        On March 19, 2018, plaintiff's claims based on incidents in 2002, including his retaliation

25   claims against defendants Albee and Sheriff Jones based on their actions in 2002, were dismissed

26   with prejudice, and plaintiff's remaining claims, including his claim against Jones based on

27   Jones' alleged false claim in 2015, were dismissed without prejudice.  (ECF No. 29, adopting

28   ECF No. 26.)  The district court confirmed that the instant action proceeds solely on plaintiff's

1

1   due process claims against defendants Alexander and the Sacramento County Sheriff's

2   Department.  (ECF No. 29, adopting ECF No. 26 at 7.)

3         On July 9, 2019, the undersigned recommended that the district court deny plaintiff's

4   motion to amend to add new claims and additional defendants, including previously dismissed or

5   omitted from an amended pleading, Albee, Epperson, and Scott Jones.  (ECF No. 68.)  But

6   plaintiff was allowed to substitute defendant Gregory for defendant Alexander.  (Id.)  On

7   September 4, 2019, the findings and recommendations were adopted in full.  (ECF No. 78.)

8   II.  Plaintiff's Second Amended Complaint

9         Plaintiff alleges that despite being acquitted by a jury of an attempted murder charge,

10  defendants Sgt. Gregory and the Sacramento County Sheriff's Department failed to correct their

11  records.  In 2015, plaintiff confirmed that the jail locator card continued to reference the

12  attempted murder charge, despite plaintiff's acquittal.  He contends that the failure to correct

13  these records subjects him to continual torment by jail staff, and results in further trumped-up

14  charges against him.  Plaintiff claims his efforts to correct such records have failed.  Liberally

15  construed, the court found plaintiff's second amended complaint states a potentially cognizable

16  due process claim against defendants based on their alleged failure to correct their internal

17  records to reflect that plaintiff was acquitted by a jury of the attempted murder charge.  (ECF No.

18  26 at 7.)

19  III.  Legal Standards for Summary Judgment

20        Summary judgment is appropriate when it is demonstrated that the standard set forth in

21  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

22  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

23  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

24              Under summary judgment practice, the moving party always bears
              the initial responsibility of informing the district court of the basis
25              for its motion, and identifying those portions of "the pleadings,
              depositions, answers to interrogatories, and admissions on file,
26              together with the affidavits, if any," which it believes demonstrate
              the absence of a genuine issue of material fact.
27

28  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

burden of production may rely on a showing that a party who does have the trial burden cannot

produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to

the opposing party to establish that a genuine issue as to any material fact actually exists.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of such a factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."  Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).  The court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  Id. (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)); see also ACLU of Nev. v. City of Las Vegas, 466 F.3d 784, 790-91 (9th Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance

4

the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

By contemporaneous notice provided on October 28, 2019 (ECF No. 79-3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV.  Plaintiff's Motion for Summary Judgment

On November 4, 2019, plaintiff filed a two-page motion for summary judgment.  (ECF No. 80.)  Plaintiff argues that despite filing a motion for summary judgment sixty days prior, defendant "failed to dispute the fact and the documentary evidence submitted to this Court." (ECF No. 80.)  However, by order filed January 17, 2020, plaintiff's July 12, 2019 motion for partial summary judgment was denied, without prejudice, as a sanction for his reliance on documents he failed to disclose to defendants in the discovery process.  (ECF No. 84 at 12.)  On May 27, 2020, the district court, upon reconsideration, affirmed the order denying the motion. (ECF No. 88.)  Thus, defendants were not required to oppose plaintiff's first summary judgment motion.  In any event, defendants did, in fact, file a timely opposition prior to the court's order imposing sanctions.  (ECF No. 75.)

Plaintiff's two-page motion for summary judgment is wholly insufficient under Rule 56 of the Federal Rules of Civil Procedure, as well as Local Rule 260.  Therefore, the undersigned recommends that plaintiff's motion be denied as procedurally deficient.

V.  Defendants' Motion for Summary Judgment

A.  Timeliness of Opposition

Initially, defendants argue that their motion should be granted because plaintiff conceded the motion by failing to timely file an opposition.  Indeed, plaintiff's opposition was untimely-filed.  Under Local Rule 230(l), plaintiff's opposition was due on or before November 18, 2019, but plaintiff did not file his opposition until December 4, 2019,[1] and only after defendants filed

---

[1]  Plaintiff's filing is given benefit of the mailbox rule.  See Houston v. Lack, 487 U.S. 266 (1988).  (ECF No. 82 at 168.)

their reply to plaintiff's non-opposition on November 25, 2019, pointing out such failure.  Also, in his opposition, plaintiff did not address the timeliness of his opposition.  However, he did explain that he had no access to the prison law library to obtain legal supplies or photocopy documents, albeit without reference to specific dates.  (ECF No. 82 at 1.)  Despite such alleged lack of access, plaintiff was able to file a 168-page opposition, 101 pages of which are exhibits.  (ECF No. 82 at 66-167.)

The court acknowledges that plaintiff is proceeding pro se, but plaintiff is required to meet court deadlines, and, if he is unable to do so, must request an extension of time before the deadline expires.  However, because of plaintiff's alleged inability to access the prison law library, as well as the current pandemic, the court grants plaintiff an extension of time, *nunc pro tunc*, on this occasion only, and considers his opposition.  Plaintiff should carefully calendar deadlines in the future.

B.  Other Procedural Deficiencies

As for the other procedural deficiencies raised by defendants in their reply, the undersigned observes that plaintiff exceeded the page limit, failed to include an index in violation of Local Rule 133(k), and failed to respond to defendants' statement of undisputed facts, despite having received notice under Rand.  However, because plaintiff is proceeding pro se, the undersigned considers plaintiff's opposition.

C.  Defendants' Evidentiary Objections (ECF No. 83-1)

1.  The undersigned sustains defendants' objections to plaintiff's reliance on various prior bad acts that allegedly occurred in 2001 and 2002 by Sheriff Scott Jones, who was previously dismissed from this action.  (ECF No. 29.)  Plaintiff's arguments based thereon are disregarded.

2.  The undersigned sustains defendants' objections to plaintiff's newly disclosed jail conditions which were not included in plaintiff's response to defendants' special interrogatory No. 19 (UDF 24).  Plaintiff failed to supplement his discovery response.  Due to plaintiff's failure to timely disclose, the court will not consider plaintiff's new claims that he was purportedly being kicked out of the IMAP program (ECF No. 82 at 31:9-10); being deprived of outdoor recreation (ECF No. 82 at 23:20); and being deprived of indoor recreation (ECF No. 82 at 23:20).  Fed. R.

6

1   Civ. P. 26(e); 37(c)(1); see also ECF No. 64.

2          3. Defendants' objections to plaintiff submitting previously undisclosed documents in

3   support of his opposition are sustained.  As defendants point out, plaintiff was previously

4   sanctioned for his failure to cooperate in discovery based on his failure to timely respond to a

5   request for production of documents, and then relied on undisclosed documents in support of his

6   initial motion for summary judgment.  (ECF No. 84.)  Plaintiff was previously warned about

7   failures to disclose such documents through discovery, including a second reiteration of such

8   warnings, and the court found that "plaintiff's filing of a dispositive motion supported by

9   documents not provided to defendants through discovery supports the court's finding that

10  plaintiff's actions were willful and intentional, and that he has acted in bad faith."  (ECF No. 84 at

11  9, 11.)  The same is true for undisclosed documents being submitted in support of an opposition

12  to a dispositive motion.  Therefore, the undisclosed documents are excluded from consideration

13  based on plaintiff's repeated discovery abuse. Fed. R. Civ. P. 37(b)(2)(A)(ii); 37(c).  The court

14  will not consider plaintiff's documents ECF No. 82 at 66-75, 77-80, 87-99, 111, 114-15; 118-20;

15  134-40; 143; 146-50; 159; 162-67.

16         4. Finally, defendants object to plaintiff's statement:  "While at SCMJ I was mistreated

17  terribly because of inaccurate comment/remark annotated on my locator card by Defendants."

18  (ECF No. 83-1 at 6, citing Pl.'s decl. ¶ 3.)  Defendants argue that such statement lacks personal

19  knowledge, lacks foundation, is speculation, conclusory and irrelevant.  Because defendants'

20  objection involves the ultimate decision in this case, the undersigned addresses plaintiff's

21  declaration in analyzing the motion below.

22         D.  Plaintiff's Evidentiary Objections

23         Plaintiff challenges the declarations of Alex McCamy and Patrick Rowe, objecting that

24  each defendant must provide his or her own declaration, and that the court may not grant

25  ////

26  ////

27

28

                                          7

summary judgment on the basis of an attorney's declaration.[2]  (ECF No. 82 at 5.)  Plaintiff also claims that defendants have not provided an affidavit from any defendant attesting to the legitimacy of its practices in annotating the jail locator cards.  (ECF No. 82 at 6.)

Rule 56 provides that a party asserting that a fact cannot be genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The rule further provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56.

Plaintiff cites no legal authority requiring that each defendant must submit his or her own affidavit or declaration in support of a motion for summary judgment.  Federal Rule 56 does not so require.  Defendants chose to submit the declarations of Lt. McCamy and Deputy Sheriff Rowe, whose declarations attested to matters within their own personal knowledge, except for those matters stated on information and belief, and such declarations constitute evidence in support of defendants' motion for summary judgment.  The court addresses plaintiff's objections to the substance of such declarations in the discussion of the merits of the motion below.

Moreover, defense counsel provided a declaration as to matters within his own personal knowledge, except to the facts stated on information and belief, in connection with interrogatories and plaintiff's deposition.  (ECF No. 79-4 at 149-50.)  Nothing in defense counsel's declaration addresses the substance of the issues to be addressed in the motion for summary judgment, and

---

[2]  Plaintiff also objects that defendants hired a private law firm at taxpayer expense rather than being represented by the Office of the Attorney General.  (ECF No. 82 at 5.)  But the instant case is against county defendants, not defendants who work for the state or a state prison.  In any event, the legal representation of defendants is not relevant to the issues herein.

1 the undersigned is not ruling on the motion based solely on defense counsel's declaration.  Thus,

2 plaintiff's objections are not well-taken.

3      Accordingly, plaintiff's evidentiary objections are overruled.

4      E.  Undisputed Facts[3] ("UDF")

5      1.  Plaintiff is currently a state prisoner serving a 25 year-to-life sentence under the

6 California Three Strikes Law.  (ECF No. 79-4 at 118 (Pl.'s Dep. at 26) & at 138 (McCamy Decl.

7 ¶ 3).)  Defendants are the Sacramento County Sheriff's Department and Sgt. Gregory, who is a

8 sergeant employed at the Sacramento County Main Jail ("SCMJ").[4]

9      2.  On April 13, 2002, Sacramento County Main Jail internal jail report number

10 849352330 was issued, setting forth the factual circumstances that led to plaintiff being booked

11 on attempted murder charges and describes the disciplinary action he received from SCMJ for

12 violating jail policies.[5]  (ECF No. 79-4 at 4-8 (2002 Incident Report), at 127-30 (Pl.'s Dep. at

13 150-53), at 138 (McCamy Decl. ¶ 3), & at 146-47 (Rowe Decl. ¶ 9).)

14      On April 16, 2002, plaintiff was charged with two felonies, violations of California Penal

15 Code Sections 664(E)/187 (attempted murder on a peace officer) and 245(C) (assault), in People

16 v. Michael Smith, No. 02F03308 (Sacramento County Superior Court).  (ECF No. 82 at 108.)

17 Petitioner was acquitted of Section 664(E)/187, and Section 245(C) was dismissed.  (ECF No. 82

18 at 108.)

19 ////

20

21 [3]  For purposes of summary judgment, the undersigned finds these facts are undisputed, unless otherwise indicated.

22 [4]  On July 9, 2019, the court substituted the correct name of the defendant incorrectly identified as

23 "Alexander" in the pleadings, and Sgt. Gregory was interlineated for Sgt. Alexander.  (ECF No.

24 68.)  In lieu of filing an answer, Sgt. Gregory filed a motion for summary judgment under Federal Rule of Civil Procedure 56.  (ECF No. 79.)

25 [5]  Plaintiff was charged with assaults on jail staff, violations of a criminal statute, and threats

26 directed toward jail staff.  (ECF No. 79-4 at 4.)  The disposition states: "30 DAYS FULL REST/ISO ON 8 WEST, 12 DAYS DISCIPLINE DIET."  (ECF No. 79-4 at 4, 7.)  The report

27 notes that plaintiff was additionally booked for attempted homicide of Deputy Albee.  (ECF No. 79-4 at 6.)

28

3.  Plaintiff was convicted in 2009 of gassing a California Department of Corrections and Rehabilitation ("CDCR") employee, resulting in a four-year sentence, to be served consecutive to his 25 year-to-life sentence.  (ECF No. 79-4 at 119, 120, 132 (Pl.'s Dep. at 27, 28, 156), at 138 (McCamy Decl. ¶ 3).)

4.  Plaintiff admitted he has a history of initiating multiple lawsuits against state and county entities since he was incarcerated.  (ECF No. 79-4 at 122-23, 124, 125 (Pl.'s Dep. 80-81, 92, 96).)

5.  When plaintiff arrived at SCMJ in both June and September of 2013, plaintiff was designated as a Security Housing Unit ("SHU") inmate while in prison custody.  (ECF No. 79-4 at 10-14 (Ex. B Classification Records), at 132-34 (Pl.'s Dep. at 156-58), & at 138 (McCamy Decl. ¶ 3).)

6.  Plaintiff was housed at SCMJ from June 24, 2013, through July 31, 2013.  (ECF No. 79-4 at 132-33 (Pl.'s Dep. at 156-57), & at 138 (McCamy Decl. ¶ 3); ECF No. 82 at 2.)

7.  Plaintiff returned to SCMJ on September 24, 2013, and remained at SCMJ until June 1, 2015.[6]  (ECF No. 79-4 at 128-30 (Pl.'s Dep. at 151-53), & at 138 (McCamy Decl. ¶ 3).)

8.  When inmates are transferred to the SCMJ from a prison facility, it is defendant SCMJ's practice for classification officers to consider the inmate's previous housing status at the prior prison facility and the inmate's criminal history, among other things, when determining appropriate housing at SCMJ.  (ECF No. 79-4 at 138-39 (McCamy Decl. ¶ 6).)

9.  Generally, inmates designated as "high" custody inmates are composed of individuals who committed serious crimes or are known to be assaultive to inmates or personnel.  (ECF No. 79-4 at 138 (McCamy Decl. ¶ 5).)

////

---

[6]  In his opposition, plaintiff claims he remained at the SCMJ through August 2015.  (ECF No. 82 at 2.)  However, in his deposition, he testified he left the SCMJ on June 1, 2015, and Lt. McCamy confirmed the June 1, 2015 departure.  (ECF No. 79-4 at 130, 138.)  Plaintiff also claims he was housed at the SCMJ for a "third period on January 7, 2016," and a "fourth period on March 23, 2016."  (ECF No. 82 at 2.)  But this action proceeds on plaintiff's due process claims concerning the locator cards used during his 2013 and 2013 through 2015 housing at the SCMJ.

10.   Classification Officers Albright-Mundy and Philip Daw determined that plaintiff should be housed in Total Separation (T-Sep) during June and July of 2013, as well as when he initially came back on September 24, 2013, because of his criminal history and housing status as a SHU inmate in prison.[7]  (ECF No. 79-4 at 10-14 (Ex. B Classification Records); & at 138-39 (McCamy Decl. ¶ 6).)

11.   After a period of time, defendant SCMJ took plaintiff out of T-Sep and placed him in general population housing.  (ECF No. 79-4 at 10-14 (Ex. B Classification Records), & at 140 (McCamy Decl. ¶ 11).)

12.   Defendant SCMJ also decided to place plaintiff as a "high" custody inmate because of his extensive criminal history, which included assaultive behavior on prison personnel.  (ECF No. 79-4 at 138-39 (McCamy Decl. ¶ 6).)

13.   Locator cards are created for all inmates <u>after</u> an inmate has been booked and receives his or her housing classification at SCMJ.  (ECF No. 79-4 at 139 (McCamy Decl. ¶ 7) & at 146 (Rowe Decl. ¶ 8).)

14.   The locator cards are kept on the floor where the inmate is housed.[8]  (ECF No. 79-4 at 139 (McCamy Decl. ¶ 7), & at 145 (Rowe Decl. ¶ 3).)

15.   Locator cards are used by floor deputies who have daily face-to-face and physical contact with the inmates.  (ECF No. 79-4 at 139 (McCamy Decl. ¶ 7), & at 145 (Rowe Decl. ¶ 5).)

////

---

[7]  Plaintiff objects that his CDCR SHU term expired on October 9, 2013.  (ECF No. 82 at 3.)  However, he returned to SCMJ on September 24, 2013, while he was still serving his CDCR SHU term, and at which time the SCMJ made its initial classification determination.

[8]  In his pleading, plaintiff alleges that the CDCR maintains in its electronic files that plaintiff has an "active" case for attempted murder of a deputy.  (ECF No. 25 at 13.)  He also claims that in a 2016 ruling by the state court, plaintiff was denied resentencing "as an unreasonable threat to public safety because the court stated plaintiff attempted to murder a deputy sheriff."  (ECF No. 25 at 13.)  But plaintiff adduced no evidence demonstrating that any third party, including the CDCR or a state court judge, had access to the two jail locator cards at issue here.  Further, plaintiff adduced no evidence demonstrating that such alleged actions by third parties were taken because of the jail locator cards or information contained therein.  Moreover, none of these third parties are parties to this litigation.

16.  There is a specific section on the locator card entitled "Charges."  (ECF No. 79-4 at 16 (June-July 2013 Locator Card), at 18 (Sept. 2013-July 2015 Locator Card), & at 146-47 (Rowe Decl. ¶ 9).)  Both locator cards referenced plaintiff's charges as "2620 Order to Produce."  (ECF No. 79-4 at 16, 18; ECF No. 82 at 76, 112.)

17.  The locator cards also allow deputies to provide "remarks."  Under the "remarks" section, defendant SCMJ has a practice of annotating locator cards information involving officer or inmate safety concerns.  (ECF No. 79-4 at 16 (June-July 2013 Locator Card), at 18 (Sept. 2013-July 2015 Locator Card), & at 139 (McCamy Decl. ¶ 7).)

18.  Plaintiff's first locator card provided four different pieces of information in the "remarks" section: (1) "known for gassing;" (2) "tried to throw Dep. Albee off tier in 02!;" (3) "SHU inmate;" and (4) "known for litigation."  (ECF No. 79-4 at 16 (June-July 2013 Locator Card); ECF No. 82 at 76.)

19.  The "remarks" on plaintiff's second locator card stated:  "CAUTION per Sgt Epperson se [unclear] 849352330 (2002) (664)187 on Deputy."  (ECF No. 79-4 at 18 (Sept. 2013-July 2015 Locator Card); ECF No. 82 at 112.)

20.  The "remarks" on plaintiff's locator cards followed defendant SCMJ's practice of providing information involving officer and inmate safety concerns.  (ECF No. 79-4 at 139 (McCamy Decl. ¶ 8), at 146 (Rowe Decl. ¶ 8).)

21.  The "remarks" were not used to discipline or otherwise restrain plaintiff's privileges while incarcerated at SCMJ.  (ECF No. 79-4 at 145 (Rowe Decl. ¶ 5).)

22.  Defendant SCMJ served plaintiff with special interrogatories.  (ECF No. 79-4 at 95-100 (Special Interrogs.), & at 149 (Fessenden Decl. ¶ 3).)

23.  In response to those Interrogatories, plaintiff specifically claims with regard to the information that was on his locator card:  "Defendants deliberately made it appear that I was at SCMJ for that charge [664/187], without annotating the disposition of that charge…."  (ECF No. 79-4 at 109-10 (Pl.'s Resp. to Special Interrog. No. 18), & at 149 (Fessenden Decl. ¶ 3).)

////

12

24.  When asked how he was negatively impacted by the information on his locator card, plaintiff identified the following:

> 1. I was maintained in Total Separation status
> 2. Forced to recreate alone
> 3. Forced to be in a cell alone
> 4. Forced to go to dayroom alone
> 5. Forced to go to visits alone
> 6. Maintained in leg irons and wrist restraints while at Court for hours at a time
> 7. Believed by other Deputies to be a threat to officer safety and security
> 8. Illegally placed into a sober cell with drunks in violation of Title 15 California Code of Regulations
> 9. Deprived of access to the law library although I was represented in pro-per
> 10. Deputies viewed me in a dangerous light and magnified normal conduct into misconduct
> 11. Denied medical care for serious medical needs
> 12. Fake Incident Reports
> 13. Looked at by all personnel who read the locator card as an animal
> 14. Feelings of hopelessness
> 15. Nightmares because the ill treatment caused me to relive the abuse, physical attack upon me by SCMJ Deputies
> 16. [sic] Office of District Attorney used the charge in its Opposition to me being re-sentenced…
> 17. [sic] Designated as "High Custody"…
> 18. [sic] I suffer from deep depression
> 19. [sic] I was angry…
> 20. [sic] Forced to be on cell confinement
> 21. [sic] Forced to be cellmates with dangerous inmates
> 22. [sic] Commissary not delivered
> 23. [sic] Impeded Settlement Conference

(ECF No. 79-4 at 109-11 (Pl.'s Resp. to Special Interrog. No. 19), & at 149 (Fessenden Decl. ¶ 3).)

25.  Defendant SCMJ has a practice of hand delivering legal materials to inmates who are housed in T-Sep because their physical presence in the law library is deemed a safety risk to jail staff.  (ECF No. 79-4 at 140-41 (McCamy Decl. ¶ 13).)

26.  Plaintiff sustained only one disciplinary action between 2013 and 2015;[9] after being given a hearing on an incident involving insubordination and blocking of plaintiff's cell light, and going through two levels of review, Lieutenant Kolb decided that plaintiff's conduct in being

////

---

[9]  Plaintiff was involved in five incident reports, but only sustained one disciplinary action.  (ECF No. 79-4 at 141.)

1    insubordinate toward jail staff violated jail policy.  (ECF No. 79-4 at 70-77 (Pl.'s Disciplinary

2    Action), & at 141-42 (McCamy Decl. ¶ 17).)

3            27.  The annotated notes on plaintiff's locator cards were intended for institutional,

4    officer, and inmate safety reasons.  (ECF No. 79-4 at 145-46 (Rowe Decl. ¶ 4-6).)

5            E.  Governing Standards

6            1.  The Civil Rights Act

7            The Civil Rights Act under which this action was filed provides as follows:

8                    Every person who, under color of [state law] . . . subjects, or causes
                     to be subjected, any citizen of the United States . . . to the deprivation
9                    of any rights, privileges, or immunities secured by the Constitution .
                     . . shall be liable to the party injured in an action at law, suit in equity,
10                   or other proper proceeding for redress.

11   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

12   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

13   Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

14   liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

15   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

16   demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

17   to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

18   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

19   legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

20   588 F.2d 740, 743 (9th Cir. 1978).

21           2.  Due Process

22           The Due Process Clause protects prisoners from being deprived of liberty without due

23   process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Wilkinson v. Austin, 545 U.S.

24   209, 221 (2005).  The due process clause of the Fourteenth Amendment protects two distinct but

25   related rights:  procedural due process and substantive due process.  Albright v. Oliver, 510 U.S.

26   266, 272 (1994).

27           The substantive protections of the due process clause bar certain governmental actions

28   regardless of the fairness of the procedures that are used to implement them.  Cty. of Sacramento

1    v. Lewis, 523 U.S. 833, 840 (1998).  Therefore, the substantive protections of the due process

2    clause are intended to prevent government officials from abusing their power or employing it as

3    an instrument of oppression.  Lewis, 523 U.S. at 846.  The Supreme Court has held that "the

4    substantive component of the Due Process Clause is violated by executive action only when it

5    'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"

6    Id. at 847.  "[O]nly the most egregious official conduct can be said to be arbitrary in a

7    constitutional sense."  Brittain v. Hansen, 451 F.3d 982, 990 (9th Cir. 2006) (quoting Lewis, 523

8    U.S. at 846).

9         To invoke a cause of action for deprivation of procedural due process, a plaintiff must first

10   establish the existence of a liberty interest for which the protection is sought.  "States may under

11   certain circumstances create liberty interests which are protected by the Due Process Clause."

12   Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are

13   generally limited to freedom from restraint which "imposes atypical and significant hardship on

14   the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484; Myron v.

15   Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

16        As the Ninth Circuit explained:

17        "It is well-established that '[t]he requirements of procedural due
          process apply only to the deprivation of interests encompassed by the
18        Fourteenth Amendment's protection of liberty and property.'"
          Burnsworth v. Gunderson, 179 F.3d 771, 774 (9th Cir. 1999)
19        (alteration in original) (quoting Bd. of Regents v. Roth, 408 U.S. 564,
          569, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972)).  "Under Sandin [v.
20        Conner], a prisoner possesses a liberty interest under the federal
          constitution when a change occurs in confinement that imposes an
21        'atypical and significant hardship . . . in relation to the ordinary
          incidents of prison life.'"  Resnick v. Hayes, 213 F.3d 443, 448 (9th
22        Cir. 2000) (alteration in original) (quoting Sandin, 515 U.S. at 484,
          115 S. Ct. 2293).
23

24   Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

25        Sandin used three factors to determine whether the prisoner possessed a liberty interest in

26   avoiding disciplinary segregation:  "(1) disciplinary segregation was essentially the same as

27   discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and

28   conditions in the general population showed that the plaintiff suffered no "major disruption in his

1    environment"; and (3) the length of the plaintiff's sentence was not affected."  Resnick, 213 F.3d

2    at 448, quoting Sandin, 515 U.S. at 486-87.  Thus, "Sandin requires a factual comparison between

3    conditions in general population or administrative segregation (whichever is applicable) and

4    disciplinary segregation, examining the hardship caused by the prisoner's challenged action in

5    relation to the basic conditions of life as a prisoner."  Jackson v. Carey, 353 F.3d at 755, citing

6    see Resnick, 213 F.3d at 448; Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996).  "What less

7    egregious condition or combination of conditions or factors would meet the test requires case by

8    case, fact by fact consideration."  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), opinion

9    amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998).

10         F.  Discussion

11         In the instant case, plaintiff does not challenge disciplinary proceedings or the application

12   of jail regulations.  Rather, plaintiff argues that his due process rights were violated by the

13   annotation to, and use of, two jail locator cards which he alleges contained false information.  As

14   argued by defendants, plaintiff's due process claims fail for several reasons.[10]

15         First, and importantly, because it is undisputed that the jail locator cards are created after

16   the inmate is booked and classified for housing, plaintiff cannot demonstrate that his housing in

17   T-Sep or his classification as a "high" custody inmate was based on either jail locator card.[11]

18   _____

19   [10]  The instant action does not challenge plaintiff's due process rights in connection with the
     underlying criminal charges or the jail disciplinary hearing.  Plaintiff's due process rights were
20   protected because the criminal charges were heard by a jury, and plaintiff concedes he was
     provided a hearing on the jail incident report number 849352330.  (ECF No. 82 at 7.)  As the
21   court previously found, any challenge to the hearing on incident report number 849352330 arising
     from the April 13, 2002 incident is barred by the statute of limitations.  (ECF No. 26 at 3-5;
22   adopted by ECF No. 29.)

23   [11]  In his operative pleading, plaintiff does not challenge his classification, or placement in T-Sep,
     or name jail staff as defendants responsible for such decisions.  (ECF No. 25.)  But because
24   plaintiff adduced no evidence demonstrating that he was housed in T-Sep or classified as "high"
     custody because of the jail locator cards, or by either named defendant, the court need not
25   evaluate whether such placement or classification imposed atypical and significant hardships on
     plaintiff.  That said, it is undisputed that plaintiff was housed in the SHU while in CDCR custody
26   each time he was transferred to SCMJ in 2013, and it is undisputed that it was the practice at
     SCMJ to consider an inmate's prior housing status and his criminal history, which would include
27   the 2009 conviction for gassing a correctional officer, in determining the inmate's appropriate
     housing at the SCMJ, whether or not it took into account the 2002 incident.

28

16

Similarly, plaintiff's claim that his placement in the sobering cell was based on a locator card fails because it is undisputed that such card had not yet been created at the time he was put in the sobering cell.  Because the jail locator cards were created <u>after</u> plaintiff was booked and classified for housing, plaintiff was not entitled to any procedural due process in connection with the jail locator cards because the cards were not used to house plaintiff in T-Sep or the sobering cell.

In his opposition, plaintiff presumes that the initial housing review conducted by nonparty Sgt. Hubbard incorporated language from the jail locator card.  But it is undisputed that the jail locator cards are created <u>after</u> classification decisions are made, and plaintiff adduced no evidence to the contrary.  Rather, plaintiff relies on Title 15 of the California Code of Regulations section 3316(c)(3).  However, as argued by defendants, the cited regulation does not apply to county jails, but rather to the California Department of Corrections and Rehabilitation.[12]  But even assuming, *arguendo*, such regulations did apply to the SCMJ, violations of state prison rules and regulations, without more, do not support any claims under § 1983.  <u>Ove v. Gwinn</u>, 264 F.3d 817, 824 (9th Cir. 2001); <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997).  Only if the events complained of rise to the level of a federal statutory or constitutional violation may plaintiff pursue them under § 1983.  <u>Patel v. Kent School Dist.</u>, 648 F.3d 965, 971 (9th Cir. 2011); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).

////

---

[12]  The regulation provides, in pertinent part:

> (c) Referral of an inmate's misconduct for prosecution shall not stay the time limits for a disciplinary hearing unless the inmate submits a written request to the chief disciplinary officer or signs and dates the RVR, Serious Rules Violation Report, requesting postponement of the hearing pending the outcome of the referral.
>
> (1) A postponed disciplinary hearing shall be held within 30 days after any one of the following events:
>
> . . .
>
> (C) Written notice is received that the prosecuting authority does not intend to prosecute.

Cal. Code Regs. tit. 15, § 3316(c).

1    Second, plaintiff is serving a life sentence.  (UDF 1.)  Thus, plaintiff cannot demonstrate

2    that the SCMJ's use of the locator card invariably affected the length or duration of his sentence.

3    See Keenan, 83 F.3d at 1089 (interpreting Sandin); Ramirez v. Galaza, 334 F.3d 850, 862 (2003).

4    Third, neither jail locator card states that plaintiff was convicted of attempted murder of a

5    jail deputy.  Rather, the remarks section of the locator cards legitimately reference charges raised

6    in jail report number 849352330.  The first locator card references the underlying factual

7    allegations from the jail report; the second card references the jail report number, but also

8    references "(664)187," which are the California Penal Code Sections plaintiff was alleged to have

9    violated.  It is undisputed that plaintiff sustained a jail disciplinary based on the factual

10   allegations in the jail report, whether or not plaintiff was subsequently acquitted of attempted

11   murder in the Sacramento County Superior Court.  Plaintiff adduced no evidence that the jail

12   disciplinary was overturned or vacated.[13]

13   Thus, it is undisputed that the jail locator cards were annotated with factual information,

14   conceded to by plaintiff in his deposition.  (UDF 2, 3, 4, 5.)  Defendants adduced uncontroverted

15   evidence that such annotations identified inmate and officer safety concerns, were not used to

16   discipline or restrain plaintiff's privileges at SCMJ, and that such annotations are made as to all

---

17   [13]  But even if the locator cards contained false information, prisoners do not have a liberty

18   interest in being free from false accusations of misconduct.  This means that the falsification of a
report, even when intentional, does not alone give rise to a claim under § 1983.  Sprouse v.

19   Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges
and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not

20   state constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The
prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused

21   of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v.
Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false

22   evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which
relief can be granted where the procedural due process protections . . . are provided.").  "[T]he fact

23   that a prisoner may have been innocent of disciplinary charges brought against him and
incorrectly held in administrative segregation does not raise a due process issue.  The Constitution

24   demands due process, not error free decision-making."  Jones v. Woodward, 2015 WL 1014257,
*2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994)).  In addition,

25   "[t]he issuance of Rules Violation Reports, even if false, does not rise to the level of cruel and
unusual punishment."  Cauthen v. Rivera, 2013 WL 1820260, at *10  (E.D. Cal. 2013) (and cases

26   cited therein); Jones v. Prater, 2012 WL 1979225, at *2 (E.D. Cal. 2012) ("[P]laintiff cannot state

27   a cognizable Eighth Amendment violation based on an allegation that defendants issued a false
rules violation against plaintiff.").

28

18

1    jail inmates.  (UDF 13, 20, 21, 27.)  Although plaintiff argues that such practice is unreasonable

2    and arbitrary, he cites to no evidence in support.  On this record, the undersigned cannot

3    characterize the practice of using or annotating jail locator cards with facts pertinent to the safety

4    of inmates and jail staff to be "conscience shocking," "arbitrary," or "egregious official conduct."

5    See Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010) (requiring plaintiffs to show an

6    officer's conduct "shocks the conscience" to prevail on a substantive due process claim).

7            In addition, the locator cards clearly note the inmate's "charges."  Both locator cards at

8    issue here reflect that the "charges" for which plaintiff was housed at the SCMJ at that time were

9    based on a "2620 Order to Produce," not for criminal charges for attempted murder.  Thus, no

10   reasonable juror or sheriff's deputy could view the notes in the remarks section as the reason

11   plaintiff was housed at the SCMJ at that time.

12          Fourth, even assuming plaintiff had a protected liberty interest in the jail locator cards,

13   plaintiff has failed to adduce evidence that any of the alleged negative treatment he experienced

14   was attributable to such cards or the information contained therein.  Rather, he declares that "at

15   SCMJ [he] was mistreated terribly because of an inaccurate comment/remark annotated on [his]

16   locator card by the defendants."  (ECF No. 82 at 48.)  In addition, he argues that defendants

17   engaged in a "plethora of individual acts, which alone are unconstitutional."  (ECF No. 82 at 36.)

18   But plaintiff provides no factual or evidentiary link or connection between the cards and the litany

19   of complaints plaintiff recounts suffering during his housing at SCMJ.  For example, he claims he

20   was denied medical care (ECF No. 82 at 20-23), but it is undisputed that the jail locator cards stay

21   on the jail floor where inmates are housed.  (UDF 14.)  Plaintiff adduces no evidence that medical

22   staff had access to, or were aware of, the jail locator cards or the information contained thereon.[14]

23          Plaintiff declares he was denied access to the inmate law library and legal mail privilege

24   to mail legal documents to his character witnesses.  (ECF No. 82 at 53.)  But plaintiff adduces no

25

---

26   [14]  Plaintiff also declares he was deprived of commissary, but again does not link such deprivation
     to the jail locator card.  In any event, as argued by defendants, plaintiff has no constitutional right
27   to use the commissary.  See Keenan, 83 F.3d at 1092 (finding no constitutional right to canteen
     items).
28

1    evidence demonstrating that such deprivations were caused by the jail locator cards or the

2    annotations thereon.  Rather, in his opposition, plaintiff claims Deputy Matoon refused to mail

3    plaintiff's legal mail "in retaliation for the false charge on the 'locator card.'"  (ECF No. 82 at

4    29.)  But aside from Deputy Matoon not being a named defendant, plaintiff adduced no evidence

5    connecting Matoon's refusal to plaintiff's jail locator card.

6        The closest plaintiff comes to attributing an incident report to the jail locator cards is in

7    his declaration when he states, "Deputy [Daugherty][15] was looking at the locator card stating that

8    [plaintiff had] attempted to murder Deputy Albee when Deputy [Daugherty] noticed that

9    [plaintiff] had the sole responsibility for ensuring that Deputy [Daugherty] could see [plaintiff's]

10   cellmate inside of the cell."  (ECF No. 82 at 49.)  But plaintiff declares Deputy Daugherty wrote

11   an incident report against plaintiff because she could not see plaintiff's cellmate.  Plaintiff does

12   not declare that Daugherty wrote the incident report <u>because</u> of the jail locator card.  But even if

13   the court inferred such connection, Deputy Daugherty is not a defendant in this action.  Moreover,

14   plaintiff was provided a hearing with a different officer, and following two levels of review, a

15   third officer, Lt. Kolb, decided that plaintiff's conduct in being insubordinate toward jail staff

16   violated jail policy.  (UDF 26.)  Plaintiff adduced no evidence demonstrating that the 2014

17   incident report was connected in any way to a named defendant.

18       Rather, plaintiff's opposition is based on speculation that many of the negative impacts he

19   suffered while housed at SCMJ in 2013 to 2015 were the result of jail staff reading the two jail

20   locator cards.  Yet, as argued by defendants, plaintiff identifies no facts or evidence

21   demonstrating that defendants imposed such negative treatment on plaintiff <u>because</u> of the jail

22   locator cards.  Plaintiff's conclusory and unsupported allegations are insufficient to create a

23   disputed issue of fact to preclude summary judgment.  <u>Lujan v. National Wildlife Federation</u>, 497

24   U.S. 871, 888-89 (1990).

25       Fifth, plaintiff argues that defendants failed to provide any evidence that the use of jail

26   locator cards is an established practice or even legitimate.  But defendants provided the

27

28   _____
     [15]  Plaintiff refers to Deputy "McDaugherty," but the incident report refers to officer
     "Daugherty."  (ECF No. 79-4 at 70.)

1   declaration of Lt. McCamy, who is familiar with the jail's record-keeping practices, and declares

2   that it is the defendant's practice to annotate locator cards with "remarks" that "will affect the

3   security or safety of the inmate, other inmates, or jail personnel."  (ECF No. 79-4 at 139.)

4   Locator cards are typically used by floor deputies who have daily face-to-face and physical

5   contact with inmates."  (Id.)  Deputy Sheriff Rowe, personally knowledgeable about the

6   Sacramento County Sheriff's Office's practice and use of locator cards at the SCMJ, also

7   confirmed that the cards are created for every inmate once housing is confirmed, and that the

8   "remarks" section is used to include "annotations regarding any issue that does not fit in any of

9   the designated sections," including "issues involving officer or inmate safety concerns."  (ECF

10  No. 79-4 at 145.)  Deputy Rowe declares that such remarks come from a variety of sources,

11  including incidents at time of arrest, booking, or from an inmate's prior stay at the jail; from other

12  law enforcement agencies during housing classification; and "floor deputies can annotate an

13  inmate's locator card based on experiences they had with the inmate during the current custody

14  session."  (Id.)  Deputy Rowe states that "the remarks section is used by jail personnel to identify

15  significant concerns that would affect the safety of the inmate, institution, personnel, or other

16  inmates."  (Id.)

17          Plaintiff adduces no evidence to the contrary.  Rather, plaintiff argues that the declarations

18  of McCamy and Rowe are untruthful because the SCMJ failed to obtain authorization from the

19  Office of Administrative Law through the APA, under California Government Code sections

20  11340, et seq., to support the annotation or use of jail locator cards.  (ECF No. 82 at 6, 14-16.)

21          However, the Administrative Procedure Act ("APA") does not govern the SCMJ, which is

22  run by Sacramento County, not the state of California.  California law provides that no state

23  agency may issue, utilize or enforce a rule that constitutes a "regulation" unless the rule has been

24  adopted as a regulation under the APA.  The California Office of Administrative Law ("OAL") is

25  charged with determining whether a given instruction or rule should be adopted pursuant to the

26  APA.  Cal. Gov't Code §§ 11340.2 and 11340.5; Cole v. Sisto, 2010 WL 2303257, *3 (E.D. Cal.

27  2010).

28  ////

1    Because the SCMJ is not a state agency, the APA does not apply.  But even if the APA

2    did apply, the Ninth Circuit Court of Appeals has held that a plaintiff cannot maintain a due

3    process cause of action under § 1983 on the premise that the plaintiff was subjected to a rule that

4    violated state law.  Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993), citing see e.g., Lone Star

5    Security & Video, Inc. v. City of Los Angeles, 584 F.3d 1232 (9th Cir. 2009)).  Moreover, as

6    argued by defendants, the annotation on, or the use of, jail locator cards is not a "regulation" as

7    defined by the APA.  Cal. Govt. Code section 11342.600 (""Regulation" means every rule,

8    regulation, order, or standard of general application or the amendment, supplement, or revision of

9    any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or

10   make specific the law enforced or administered by it, or to govern its procedure.").  Thus,

11   plaintiff's reliance on the APA is unavailing.

12   Sixth, plaintiff also challenges defendant Gregory's refusal to investigate the accuracy of,

13   or remove the remarks from the jail locator cards during plaintiff's grievance process in 2015.

14   (ECF No. 82 at 11-14.)  However, plaintiff cannot state a cognizable due process claim based on

15   the handling of inmate grievances.  Plaintiff has no stand-alone due process rights related to the

16   administrative grievance process itself.  Ramirez v. Galaza, 334 F.3d at 860; Mann v. Adams, 855

17   F.2d 639, 640 (9th Cir. 1988). A prison official's denial of a grievance does not itself violate the

18   constitution.  Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir. 2015).

19   In conclusion, defendants have adduced evidence demonstrating that they are entitled to

20   summary judgment on plaintiff's due process claims.  Plaintiff has failed to rebut such evidence

21   with competent evidence, and has failed to demonstrate that a triable issue of material fact

22   remains for trial.  Indeed, plaintiff has failed to adduce evidence demonstrating that any of the

23   alleged negative treatment he received while housed at the SCMJ was because of the jail locator

24   cards or annotations thereto, or that he sustained a constitutional violation as a result thereof.

25   Plaintiff's conclusions and speculations are insufficient.  Therefore, defendants are entitled to

26   summary judgment on plaintiff's due process claims, both procedural and substantive.

27   ////

28   ////

22

1    Accordingly, IT IS HEREBY ORDERED that:

2    1.  Plaintiff is granted an extension of time, *nunc pro tunc*, to file his opposition, and his

3    December 13, 2019 opposition is deemed timely filed;

4    2.  Defendants' request to strike plaintiff's statement of undisputed factual issues is

5    partially granted; plaintiff's questions 3, 4, 6, 8, 9, 10, and 13 (ECF No. 82 at 63-65)

6    are stricken as not relevant.

7    3.  Defendants' first three evidentiary objections are sustained.  (ECF No. 83-1.)  The

8    court will not consider plaintiff's (a) arguments concerning the alleged bad act of Sheriff Jones

9    (ECF No. 82 at 37-42); (b) previously undisclosed new claims that he was purportedly being

10   kicked out of the IMAP program (ECF No. 82 at 31:9-10); being deprived of outdoor recreation

11   (ECF No. 82 at 23:20); and being deprived of indoor recreation (ECF No. 82 at 23:20), or (c)

12   previously undisclosed documents set forth at ECF No. 82 at 66-75, 77-80, 87-99, 111, 114-15;

13   118-20; 134-40; 143; 146-50; 159; 162-67.

14   4.  Plaintiff's evidentiary objections to the declarations of McCamy and Rowe (ECF No.

15   82 at 5) are overruled.

16   Further IT IS RECOMMENDED that:

17   1.  Plaintiff's motion for summary judgment (ECF No. 80) be denied; and

18   2.  Defendants' motion for summary judgment (ECF No. 79) be granted.

19   These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

21   being served with these findings and recommendations, any party may file written objections with

22   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

23   Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

24   filed and served within fourteen days after service of the objections.  The parties are advised that

25   failure to file objections within the specified time may waive the right to appeal the District

26   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

27   Dated:  September 21, 2020

     /smit1598.msj`

28

                                        2

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE